# MILLS *v.* MARYLAND

No. 87–5367.   Argued March 30, 1988—Decided June 6, 1988

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, and STEVENS, JJ., joined. BRENNAN, J., *post*, p. 389, and WHITE, J., *post*, p. 389, filed concurring opinions. REHNQUIST, C. J., filed a dissenting opinion, in which O'CONNOR, SCALIA, and KENNEDY, JJ., joined, *post*, p. 390.

*George E. Burns, Jr.*, argued the cause for petitioner. With him on the brief were *Alan H. Murrell, Michael R. Braudes*, and *Julia Doyle Bernhardt*.

*Charles O. Monk II*, Deputy Attorney General of Maryland, argued the cause for respondent. With him on the brief were *J. Joseph Curran, Jr.*, Attorney General, and *Gary E. Bair* and *Richard B. Rosenblatt*, Assistant Attorneys General.*

JUSTICE BLACKMUN delivered the opinion of the Court.

Petitioner seeks review of a decision of Maryland's highest court which construes that State's capital sentencing scheme in a manner that preserves its constitutionality but which may not have been evident at all to the jury charged with the sentencing function in this case. Because we have no reason to believe that the jury also arrived at this "saving" construction, we must vacate the sentence of death and remand the case for resentencing.

I

Petitioner Ralph Mills was tried by a state-court jury and convicted of the first-degree murder of his cellmate in the Maryland Correctional Institution in Hagerstown. The jury found that petitioner repeatedly had stabbed his victim with a "shank" or homemade knife. In the sentencing phase of the trial, the same jury found that the State had established

---

*\*Julius L. Chambers, Richard H. Burr III, Deborah Fins*, and *Anthony G. Amsterdam* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., as *amicus curiae* urging reversal.

the one statutory aggravating circumstance it propounded, namely, that petitioner "committed the murder at a time when he was confined in a correctional institution." App. 99. Defense counsel sought to persuade the jury of the presence of certain mitigating circumstances, in particular, petitioner's relative youth, his mental infirmity, his lack of future dangerousness, and the State's failure to make any meaningful attempt to rehabilitate petitioner while he was incarcerated. *Id.*, at 89–93.[1] On the verdict form provided by the trial court pursuant to the then-existing, but since rescinded, Maryland Rule of Procedure 772A, the jury marked "no" beside each referenced mitigating circumstance and returned a sentence of death.[2]

---

[1] Among the mitigating circumstances recognized by statute in Maryland, which the jury was instructed to consider, are:

"4. The murder was committed while the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder, or emotional disturbance.

"5. The youthful age of the defendant at the time of the crime.

. . . . .

"7. It is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society.

"8. Any other facts which the jury or the court specifically sets forth in writing that it finds as mitigating circumstances in the case." Md. Ann. Code, Art. 27, § 413(g) (1987).

The defense introduced evidence, including the testimony of petitioner's mother, demonstrating that petitioner had only a sixth-grade education, that he was 20 years old at the time of the murder, and that he had been in trouble from a young age. Since petitioner was 11 or 12 years old, his mother had been in contact with state agencies concerning his behavior. Petitioner underwent therapy as a child, was diagnosed as having "minimal brain damage," and was placed on medication. Petitioner early developed drug and alcohol problems, and was assigned first to the German Children's Home and then to the Maryland Training School for Boys. App. 45–53. At the time of the murder of his cellmate, petitioner was serving the second year of a 30-year sentence for an earlier murder in the second degree.

[2] The jury was instructed to report their conclusions on a Findings and Sentence Determination form called for by Rule 772A. Prior to petitioner's sentencing, Rule 772A was replaced by Maryland Rule of Procedure

Petitioner challenged his conviction and sentence on various grounds, including an argument that the Maryland capital-punishment statute, Md. Ann. Code, Art. 27, § 413 (1987), as applied to him, was unconstitutionally mandatory.[3] Petitioner construed the statute, as explained to the jury by the court's instructions and as implemented by the verdict form, to require the imposition of the death sentence if the jury unanimously found an aggravating circumstance, but could not agree unanimously as to the existence of any particular mitigating circumstance. According to petitioner's view, even if some or all of the jurors were to believe *some* mitigating circumstance or circumstances were present, unless they could unanimously agree on the existence of the *same* mitigating factor, the sentence necessarily would be death.

The Maryland Court of Appeals concluded that the imposition of petitioner's death sentence was constitutionally sound.

---

4–343, which stipulated the use of a form similar to the one used in this case. The dissent below noted that the form provided under Rule 4–343 should have been used at petitioner's trial, but concluded that no prejudice resulted to petitioner from the use of the similar, but incorrect, form. 310 Md. 33, 77, n. 2, 527 A. 2d 3, 24, n. 2 (1987). Petitioner has not raised here any objection about the use of the outdated form, as opposed to the then-prescribed form. The form actually used at petitioner's trial, with the answers given, is set out in its entirety in the Appendix to this opinion.

[3] The Court of Appeals of Maryland disposed of the claim on the merits despite petitioner's failure, see App. 74; Tr. of Oral Arg. 12–13, to object to the verdict form or jury instructions at the sentencing proceeding. Presumably, the Court of Appeals found this appropriate either as review for plain error, see generally 3A C. Wright, Federal Practice and Procedure § 856 (2d ed. 1982), or because it concluded that Maryland law did not otherwise bar petitioner's claim. In any event, in view of the Maryland court's review on the merits, our jurisdiction over the federal constitutional question is established. See, *e. g., Orr* v. *Orr,* 440 U. S. 268, 274–275 (1979); *Franks* v. *Delaware,* 438 U. S. 154, 161–162 (1978).

We note, in passing, that counsel for petitioner had filed a pretrial motion in which he asserted generally: "That Article 27, Section 413 and 414, and Maryland Rule 772 unconstitutionally restrict the discretion of the finder of fact in determining whether the death penalty should be imposed." Record 24.

310 Md. 33, 527 A. 2d 3 (1987). The court did not dispute that if the statute and form were read as petitioner suggested, jurors *would be* improperly prevented from giving due consideration to mitigating evidence. The court, however, interpreted the statute differently and held that the requirement of unanimity applied to jury determinations of all critical issues including the acceptance *or rejection* of mitigating circumstances, observing that the verdict form was to be regarded as requiring the jury to agree unanimously in order to mark "no" with respect to the existence of each mitigating circumstance, and that the trial judge's instructions stressed the need for unanimity on all issues presented. In the absence of unanimity on the ultimate question of what sentence should be imposed, the statute required the imposition of life imprisonment. See § 413(k)(2).[4] Thus, in the court's view, "[a]s long as one juror believes that there exists a mitigating factor, and that this factor is not outweighed by the aggravating circumstances, and if such juror continues to adhere to his or her position, the sentence will not be death under the statutory scheme." 310 Md., at 54, 527 A. 2d, at 13.

The Court of Appeals recognized, however, that the statute did not fully provide what was to transpire when unanimity was lacking at various stages of the sentencing deliberation. Concluding that the state legislature did not intend that the jury should deadlock and impose a life sentence

---

[4] At the time of petitioner's trial, § 413(k)(2) provided:

"If the jury, within a reasonable time, is not able to agree as to sentence, the court shall dismiss the jury and impose a sentence of imprisonment for life." See 310 Md., at 55, 527 A. 2d, at 13.

By 1987 Md. Laws, ch. 237, effective July 1, 1987, § 413(k)(2) was amended to read:

"If the jury, within a reasonable time, is not able to agree as to whether a sentence of death shall be imposed, the court may not impose a sentence of death."

We perceive nothing significant for petitioner's case in this 1987 amendment.

whenever it could not agree unanimously to accept or reject a particular mitigating circumstance, and pursuant to its statutory authority to fill gaps in the sentencing process, see § 413(*l*), the Court of Appeals instructed that the jury should proceed to the balancing stage, leaving its answer to that circumstance blank. The court directed that each juror weigh the mitigating circumstances he or she found to be established and balance them against the aggravating circumstances unanimously found by the jury. 310 Md., at 66–68, 527 A. 2d, at 19–20.

The dissenting judge sharply disagreed with the majority's view that the state legislature intended to make the rejection of a mitigating circumstance the kind of ultimate issue that requires unanimity. He observed that the law generally requires unanimity only for verdicts, not for an alternative "predicate or historic fact" in support of the verdict. *Id.*, at 95, 527 A. 2d, at 33. The dissent also concluded that it was probable, or at least reasonably possible, that the jury understood that a "no" answer on the verdict form represented a failure to find unanimously the existence of the circumstance, rather than a unanimous determination that the circumstance did not exist. *Id.*, at 92–95, 527 A. 2d, at 32–33.

Because of the importance of the issue in Maryland's capital-punishment scheme, we granted certiorari. 484 U. S. 975 (1987).

## II

Petitioner's argument is straightforward, and well illustrated by a hypothetical situation he contends is possible under the Maryland capital sentencing scheme:[5]

> "If eleven jurors agree that there are six mitigating circumstances, the result is that no mitigating circumstance

---

[5] Section 413(b) affords the convicted capital defendant a choice between sentencing by the judge or by the jury. In this case, petitioner invoked his right to be sentenced by his jury. Our discussion of Maryland's sentencing scheme is limited to that context.

is found.  Consequently, there is nothing to weigh against any aggravating circumstance found and the judgment is death even though eleven jurors think the death penalty wholly inappropriate."  Brief for Petitioner 11.

The dissent below postulated a situation just as intuitively disturbing: All 12 jurors might agree that some mitigating circumstances were present, and even that those mitigating circumstances were significant enough to outweigh any aggravating circumstance found to exist.  But unless all 12 could agree that the same mitigating circumstance was present, they would never be permitted to engage in the weighing process or any deliberation on the appropriateness of the death penalty.  310 Md., at 79–81, 527 A. 2d, at 25–26.

Although jury discretion must be guided appropriately by objective standards, see *Godfrey* v. *Georgia,* 446 U. S. 420, 428 (1980) (plurality opinion), it would certainly be the height of arbitrariness to allow or require the imposition of the death penalty under the circumstances so postulated by petitioner or the dissent.[6]  It is beyond dispute that in a capital case "'the sentencer [may] not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'"  *Eddings* v. *Oklahoma,* 455 U. S. 104, 110 (1982), quoting *Lockett* v. *Ohio,* 438 U. S. 586, 604 (1978) (plurality opinion) (emphasis in original).  See *Skipper* v. *South Carolina,* 476 U. S. 1, 4 (1986).  The corollary that "the sentencer may not refuse to consider *or be precluded from considering*

---

[6] Indeed, the Court of Appeals contemplated only two alternative lawful consequences of a lack of unanimity to accept or reject a mitigating circumstance: the jury could deadlock, requiring the imposition of a life sentence, or, as that court has now prescribed, the jury could proceed to the balancing stage where each juror would consider all the evidence in mitigation to reach a conclusion as to whether the death penalty was warranted.

'any relevant mitigating evidence'" is equally "well established." *Ibid.* (emphasis added), quoting *Eddings,* 455 U. S., at 114.[7]

Under Maryland's sentencing scheme, if the sentencer finds that any mitigating circumstance or circumstances have been proved to exist, it then proceeds to decide whether those mitigating circumstances outweigh the aggravating circumstances and sentences the defendant accordingly. § 413(h). But if petitioner is correct, a jury that does not unanimously agree on the existence of any mitigating circumstance may not give mitigating evidence any effect whatsoever, and must impose the sentence of death. See 310 Md., at 67, 527 A. 2d, at 19. Under our decisions, it is not relevant whether the barrier to the sentencer's consideration of all mitigating evidence is interposed by statute, *Lockett* v. *Ohio, supra; Hitchcock* v. *Dugger,* 481 U. S. 393 (1987); by the sentencing court, *Eddings* v. *Oklahoma, supra;* or by an evidentiary ruling, *Skipper* v. *South Carolina, supra.* The same must be true with respect to a single juror's holdout vote against finding the presence of a mitigating circumstance. Whatever the cause, if petitioner's interpretation of the sentencing process is correct, the conclusion would necessarily be the same: "Because the [sentencer's] failure to consider all of the mitigating evidence risks erroneous imposition of the death sentence, in plain violation of *Lockett,* it is our duty to remand this case for resentencing." *Eddings* v. *Oklahoma,* 455 U. S., at 117, n. (O'CONNOR, J., concurring).

### III

### A

The critical question, then, is whether petitioner's interpretation of the sentencing process is one a reasonable jury

---

[7] No one has argued here, nor did the Maryland Court of Appeals suggest, that mitigating evidence can be rendered legally "irrelevant" by one holdout vote.

could have drawn from the instructions given by the trial judge and from the verdict form employed in this case. See *Francis* v. *Franklin*, 471 U. S. 307, 315–316 (1985) ("The question . . . is not what the State Supreme Court declares the meaning of the charge to be, but rather what a reasonable juror could have understood the charge as meaning"), citing *Sandstrom* v. *Montana*, 442 U. S. 510, 516–517 (1979). Accord, *California* v. *Brown*, 479 U. S. 538 (1987). If the jury understood the verdict form as the Court of Appeals asserted it should have, then every time it marked "no" beside a mitigating circumstance it indicated its unanimous conclusion that petitioner had not proved the relevant facts by a preponderance of the evidence, and thus the court properly upheld the judgment.[8] On the other hand, if the jury understood that it should mark "no" when it failed to agree unanimously that a mitigating circumstance existed, then some jurors were prevented from considering "factors which may call for a less severe penalty," *Lockett* v. *Ohio*, 438 U. S., at 605, and petitioner's sentence cannot stand.

With respect to findings of guilt on criminal charges, the Court consistently has followed the rule that the jury's verdict must be set aside if it could be supported on one ground but not on another, and the reviewing court was uncertain which of the two grounds was relied upon by the jury in reaching the verdict. See, *e. g., Yates* v. *United States*, 354 U. S. 298, 312 (1957); *Stromberg* v. *California*, 283 U. S. 359, 367–368 (1931). In reviewing death sentences, the Court has demanded even greater certainty that the jury's conclusions rested on proper grounds. See, *e. g., Lockett* v. *Ohio*, 438 U. S., at 605 ("[T]he risk that the death penalty

---

[8] Under Maryland law, the jury was not free at this stage to decide that the relevant facts, even if proved, did not have a mitigating effect. That decision already has been made by the state legislature. See § 413(g); see also Tr. of Oral Arg. 38–40. The jury's discretion in attaching significance to the presence of mitigating circumstances is properly exercised at the subsequent balancing stage in the process. See § 413(h).

will be imposed in spite of factors which may call for a less severe penalty . . . is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments"); *Andres* v. *United States*, 333 U. S. 740, 752 (1948) ("That reasonable men might derive a meaning from the instructions given other than the proper meaning of § 567 is probable. In death cases doubts such as those presented here should be resolved in favor of the accused");[9] accord, *Zant* v. *Stephens*, 462 U. S. 862, 884–885 (1983). Unless we can rule out the substantial possibility that the jury may have rested its verdict on the "improper" ground, we must remand for resentencing.[10]

## B

While conceding that the Court of Appeals' construction of the jury instructions and verdict form is plausible, we cannot conclude, with any degree of certainty, that the jury did not adopt petitioner's interpretation of the jury instructions and

---

[9] In *Andres* v. *United States*, the Court construed a federal statute that required imposition of the death penalty for first-degree murder unless the guilty verdict was "qualified" by the addition of the phrase "without capital punishment." See 333 U. S., at 742, and n. 1. The Court concluded that the statute required the jury to be unanimous *both* as to guilt and as to whether the death penalty should be imposed rather than, as the Government contended, requiring that the death penalty be imposed unless the jury unanimously agreed to impose the qualification. The Court of Appeals for the Ninth Circuit had also rejected the Government's contention and arrived at a construction of the statute similar to that of this Court, but found that the jury instructions had conveyed the proper construction to the jury. This Court disagreed, finding that under the instructions the jury received, they might "reasonably conclude that, if they cannot all agree to grant mercy, the verdict of guilt must stand unqualified." *Id.*, at 752.

[10] We find puzzling the dissent's citation, *post*, at 394, of *Jurek* v. *Texas*, 428 U. S. 262, 279 (1976) (WHITE, J., concurring in judgment), a case in which the Court upheld the very different sentencing procedure followed in Texas. While juries indeed may be capable of understanding the issues posed in capital sentencing proceedings, they must first be properly instructed.

verdict form. At the conclusion of the sentencing phase, the judge distributed copies of the form to the jurors. (This form is reproduced in its entirety, with the answers given, in the Appendix to this opinion.) After reading aloud the instruction part of the form's Section I and stressing the unanimity requirement, the judge explained: "[Y]ou must consider whether the aggravating circumstance number two has been proven beyond a reasonable doubt. If you unanimously conclude that it has been so proven, you should answer that question yes. *If you are not so satisfied, then of course you must answer no.*" App. 70 (emphasis added). We find it difficult to read into that statement a requirement that the "no" answer, like the "yes" answer, must be unanimous. Indeed, the verdict form establishes at least a rough equivalence between the lack of unanimity to write "yes," and writing "no": the jury learns from the form that its failure to write "yes" beside any aggravating circumstance leads to the imposition of a life sentence, the same result that obtains if the jury answers "no" for every aggravating circumstance.

The judge then moved on to Section II of the form, which addresses the jury's determination of which, if any, mitigating circumstances exist. The language at the beginning of that section is identical to that at the beginning of Section I, except that the standard of proof is by a preponderance of the evidence rather than beyond a reasonable doubt, see Appendix to this opinion, *post*, at 387, and we presume that, unless instructed to the contrary, the jury would read similar language throughout the form consistently. The jury was instructed to mark each answer "yes" or "no." Although it was clear that the jury could not mark "yes" in any box without unanimity, nothing the judge said dispelled the probable inference that "no" is the opposite of "yes," and therefore the appropriate answer to reflect an inability to answer a question in the affirmative.[11] Nothing in the verdict form or the

---

[11] As the dissent ably reports, the trial judge stressed "[o]ver and over again," *post*, at 393, that the jury's findings had to be unanimous. But not

judge's instructions even arguably is construable as suggesting the jury could leave an answer blank and proceed to the next stage in its deliberations.[12]

The only place on the form where the jury had an opportunity to write anything more than "yes" or "no" was with respect to mitigating circumstance number eight, see Appendix to this opinion, *post*, at 388, which permits the jury to recognize as mitigating anything, in addition to the enumerated mitigating factors, that petitioner offered as a basis for a sentence less than death. The judge explained to the jury that if it found any such "other" mitigating circumstances, it must list them in the space provided, and "[i]f you find no other mitigating circumstance then you make no entry upon those lines under number eight." App. 73. No instruction was given indicating what the jury should do if some but not all of the jurors were willing to recognize something about petitioner, his background, or the circumstances of the crime, as a mitigating factor.

Ordinarily, a Maryland jury reaches the balancing stage of the deliberation process any time it unanimously finds at least one mitigating circumstance, or, under the interpretation adopted by the Court of Appeals in this case, any time the jury does not unanimously reject all mitigating circumstances. Had the jurors that sentenced petitioner reached

---

once in any of those instructions did the trial court explain to the jury that if it could not reach unanimity to answer "yes," it could do something other than answer "no." The dissent, like the trial court, confuses repetition with clarity, pronouncing "over and over again" that there was only one way the jury could have understood its instructions. See *post*, at 391, 392, 393, and 394. Not even the Maryland Court of Appeals believed that. See, *infra*, at 381–383.

[12] At the conclusion of Section II, once again, the instructions were to the effect that the failure to answer "yes" to any question obtained the same consequence as answering "no" to all questions: "[I]f one or more of the above in section two have been marked yes, then you go on to section three. If all of the above in section two are marked no, then you do not complete section three." App. 73.

Section III,[13] they would have found that even if they had read the verdict form as the Court of Appeals suggests they could have, and marked "yes" or "no" only on the basis of unanimity as to either, they were not free at this point to consider *all* relevant evidence in mitigation as they balanced aggravating and mitigating circumstances. Section III instructed the jury to weigh only those mitigating circumstances marked "yes" in Section II. Any mitigating circumstance not so marked, even if not unanimously rejected, could not be considered by any juror. A jury following the instructions set out in the verdict form could be "precluded from considering, *as a mitigating factor*, [an] aspect of a defendant's character or record [or a] circumstanc[e] of the offense that the defendant proffer[ed] as a basis for a sentence less than death," *Skipper* v. *South Carolina*, 476 U. S., at 4, if even a single juror adhered to the view that such a factor should not be so considered.[14]

---

[13] The jury in this case apparently never reached the balancing stage of the process. When the jury returned to the courtroom to report its verdict, even the judge was confused by their failure to complete Section III, in accordance with the form's instructions. See App. 96. The prosecutor suggested, during a colloquy with the court, that the jurors were "hung up on that language." *Ibid.*

[14] For example, some jurors in this case might have found that petitioner's age, 20, constituted a mitigating factor, *i. e.*, youthfulness, under § 413(g)(5). Indeed, in his sentencing report the trial judge noted: "There was evidence from which the jury could have found the existence of Mitigating Circumstance No. 5 (youthful age)." App. 108. Other jurors, on the other hand, might have accepted the prosecutor's argument that petitioner was "not youthful in terms of the criminal justice system," *id.*, at 79, because of his history of criminal activity. Under such circumstances, the lack of unanimity would have prevented the jury from marking that answer "yes." Regardless of whether the answer was marked "no" or left blank, the instructions in Section III would prevent those jurors who thought petitioner's youthfulness was relevant to the ultimate sentencing decision from giving that mitigating circumstance any weight.

## C

There is, of course, no extrinsic evidence of what the jury in this case actually thought. We have before us only the verdict form and the judge's instructions. Our reading of those parts of the record leads us to conclude that there is at least a substantial risk that the jury was misinformed. The dissenting judge below was astounded by the majority's reading of the statute and verdict form, which, he said, "appears out of the blue after nearly ten years of extensive litigation involving this statute." 310 Md., at 94, 527 A. 2d, at 33. Looking to the only evidence of jury interpretation available, the dissent noted that on 25 sentencing forms completed in capital cases in which the death penalty was imposed, no answer as to the existence of mitigating circumstances was ever left blank. *Id.*, at 94, n. 9, 527 A. 2d, at 33, n. 9.

One additional bit of evidence about the natural interpretation of the form has become available since this case was decided below on June 25, 1987. On an emergency basis, the Court of Appeals promulgated a new Findings and Sentencing Determination form. See Md. Rule Proc. 4–343(e) (amended July 27, 1987, effective Aug. 17, 1987). The new form expressly incorporates the unanimity requirement as to both accepting and rejecting aggravating circumstances. More significantly, however, the section concerning mitigating circumstances is completely rewritten and changed. Now, under *each* statutory mitigating circumstance, the jury is asked to choose from among three options:

"(Mark only one)

—— (a) We unanimously find by a preponderance of the evidence that the above circumstance exists.

—— (b) We unanimously find by a preponderance of the evidence that the above circumstance does not exist.

—— (c) After a reasonable period of deliberation, one or more of us, but fewer than all 12, find by a preponder-

ance of the evidence that the above circumstance exists."
Md. Ann. Code, Md. Rules, Vol. 1 (1988), pp. 494–497.

As before, the new verdict form also provides the jury the
opportunity to articulate "additional mitigating circum-
stances." The new form, however, unlike the one used in
petitioner's case, explicitly directs the jury to articulate any
such "additional" circumstances that the jurors unanimously
agree exist, *and* any found by "[o]ne or more . . . , but fewer
than all 12" of the jurors. *Id.*, at 497.

With respect to the consideration of mitigating evidence
during the weighing and balancing process, the new verdict
form instructs jurors as follows:

> "(If the jury unanimously determines in Section III that
> no mitigating circumstances exist, do not complete Sec-
> tion IV. Proceed to Section V and enter 'Death.' If the
> jury *or any juror* determines that one or more mitigat-
> ing circumstances exist, complete Section IV.)" *Ibid.*
> (emphasis added).

Section IV now reflects the requirement that jurors not be
prevented from considering all evidence in mitigation:

> "*Each individual juror shall weigh* the aggravating cir-
> cumstances found unanimously to exist against any miti-
> gating circumstances found unanimously to exist, *as well
> as against any mitigating circumstances found by that
> individual juror to exist.*" *Ibid.* (emphasis added).

Although we are hesitant to infer too much about the prior
verdict form from the Court of Appeals' well-meant efforts
to remove ambiguity from the State's capital sentencing
scheme, we cannot avoid noticing these significant changes
effected in instructions to the jury. We can and do infer
from these changes at least *some* concern on the part of that
court that juries could misunderstand the previous instruc-
tions as to unanimity and the consideration of mitigating evi-
dence by individual jurors. We also note, for what it may be
worth, that in two cases tried since a Maryland jury has been

given the option of reporting nonunanimous votes, the jury has done so.[15]

No one on this Court was a member of the jury that sentenced Ralph Mills, or of any similarly instructed jury in Maryland. We cannot say with any degree of confidence which interpretation Mills' jury adopted. But common sense and what little extrinsic evidence we possess suggest that juries do not leave blanks and do not report themselves as deadlocked over mitigating circumstances after reasonable deliberation, see Tr. of Oral Arg. 42, unless they are expressly instructed to do so.

The decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make. Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate

---

[15] Petitioner has lodged with this Court copies of the sentencing forms used in those two cases. In *Wooten-Bey* v. *State* the new sentencing form appears to have made a significant difference: The jury found one aggravating circumstance, but failed to agree on any mitigating circumstance. It did, however, report three statutory mitigating circumstances as found by one or more but fewer than all 12 jurors. The jury also articulated three nonstatutory mitigating circumstances, as found by one or more, but not all, jurors. The jury then reported that it did not unanimously find that the aggravating circumstances marked "proven" outweighed the mitigating circumstances, and unanimously fixed the sentence at life imprisonment. See Findings and Sentencing Determination in No. C. T. 83-1497C (Cty. Ct., Prince George's Cty., 1987).

In *Doering* v. *State* the jury used a verdict form apparently containing aspects of both the old and new forms. The jurors were instructed that in the event one or more of them found a mitigating circumstance not agreed to by all 12, they could leave that answer blank. The jury exercised that option with respect to one statutory mitigating circumstance. The jury also articulated an additional nonstatutory mitigating circumstance found by one or more but not all 12 jurors. Upon balancing aggravating against mitigating circumstances, the jury sentenced the defendant to death. See Findings and Sentencing Determination in No. 86-CR-6128 (Cty. Ct., Baltimore Cty., 1987).

penalty in a particular case. The possibility that petitioner's jury conducted its task improperly certainly is great enough to require resentencing.

## IV

We conclude that there is a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance. Under our cases, the sentencer must be permitted to consider all mitigating evidence. The possibility that a single juror could block such consideration, and consequently require the jury to impose the death penalty, is one we dare not risk.

We therefore vacate the judgment of the Court of Appeals insofar as it sustained the imposition of the death penalty.[16] The case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

## APPENDIX TO OPINION OF THE COURT

### FINDINGS AND SENTENCE DETERMINATION FORM EMPLOYED AT PETITIONER'S TRIAL

*"Section I*

"Based upon the evidence we unanimously find that each of the following aggravating circumstances which is marked

---

[16] Because our conclusion on this issue is sufficient to dispose of the case, we refrain from any review of the Court of Appeals' *sua sponte* declaration, see 310 Md., at 72, n. 14, 527 A. 2d, at 22, n. 14, that no "victim impact statement" was introduced in evidence in contravention of our decision last Term in *Booth* v. *Maryland*, 482 U. S. 496 (1987).

'yes' has been proven BEYOND A REASONABLE DOUBT and each aggravating circumstance which is marked 'no' has not been proven BEYOND A REASONABLE DOUBT:

"1. The victim was a law enforcement officer who was murdered while in the performance of his duties.

|     | X  |
| --- | --- |
| yes | no |

"2. The defendant committed the murder at a time when he was confined in a correctional institution.

| X   |     |
| --- | --- |
| yes | no |

"3. The defendant committed the murder in furtherance of an escape from or an attempt to escape from or evade the lawful custody, arrest or detention of or by an officer or guard of a correctional institution or by a law enforcement officer.

|     | X  |
| --- | --- |
| yes | no |

"4. The victim was a hostage taken or attempted to be taken in the course of a kidnapping or abduction or an attempt to kidnap or abduct.

|     | X  |
| --- | --- |
| yes | no |

"5. The victim was a child abducted in violation of Code, Article 27, § 2.

|     | X  |
| --- | --- |
| yes | no |

, "6. The defendant committed the murder pursuant to an agreement to contract for remuneration or the promise of remuneration to commit the murder.

|  | X |
| --- | --- |
| yes | no |

"7. The defendant engaged or employed another person to commit the murder and the murder was committed pursuant to an agreement or contract for remuneration or the promise of remuneration.

|  | X |
| --- | --- |
| yes | no |

"8. At the time of the murder, the defendant was under the sentence of death or imprisonment for life.

|  | X |
| --- | --- |
| yes | no |

"9. The defendant committed more than one offense of murder in the first degree arising out of the same incident.

|  | X |
| --- | --- |
| yes | no |

"10. The Defendant committed the murder while committing or attempting to commit robbery, arson or rape or sexual offense in the first degree.

|  | X |
| --- | --- |
| yes | no |

"(If one or more of the above are marked 'yes', complete Section II. If all of the above are marked 'no', do not complete Sections II and III.)

*"Section II*

"Based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked 'yes' has been proven to exist by A PREPONDERANCE OF THE EVIDENCE and each mitigating circumstance marked 'no' has not been proven by A PREPONDERANCE OF THE EVIDENCE:

"1. The defendant previously (i) has not been found guilty of a crime of violence; and (ii) has not entered a plea of guilty or nolo contendere to a charge of a crime of violence; and (iii) has not been granted probation on stay or entry of judgment pursuant to a charge or a crime of violence.   As used in this paragraph, 'crime of violence' means abduction, arson, escape, kidnapping, manslaughter, except involuntary manslaughter, mayhem, murder, robbery, or rape or sexual offense in the first or second degree, or an attempt to commit any of these offenses, or the use of a handgun in the commission of a felony or another crime of violence.

X

_____   _____

yes     no

"2. The victim was a participant in the defendant's conduct or consented to the act which caused the victim's death.

X

_____   _____

yes     no

"3. The defendant acted under substantial duress, domination or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution.

X

_____   _____

yes     no

"4. The murder was committed while the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder or emotional disturbance.

|      | X   |
| ---- | --- |
| yes  | no  |

"5. The youthful age of the defendant at the time of the crime.

|      | X   |
| ---- | --- |
| yes  | no  |

"6. The act of the defendant was not the sole proximate cause of the victim's death.

|      | X   |
| ---- | --- |
| yes  | no  |

"7. It is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society.

|      | X   |
| ---- | --- |
| yes  | no  |

"8. Other mitigating circumstances exist, as set forth below:
None.

"(If one or more of the above in Section II have been marked 'yes', complete Section III.   If all of the above in Section II are marked 'no', you do not complete Section III.)

## "Section III

"Based on the evidence we unanimously find that it has been proven by A PREPONDERANCE OF THE EVIDENCE that the mitigating circumstances marked 'yes' in

Section II outweigh the aggravating circumstances marked 'yes' in Section I.

———— ————
yes      no

## "DETERMINATION OF SENTENCE

"Enter the determination of sentence either 'Life Imprisonment' or 'Death' according to the following instructions:

"1. If all of the answers in Section I are marked 'no' enter 'Life Imprisonment.'

"2. If Section III was completed and was marked 'yes' enter 'Life Imprisonment.'

"3. If Section II was completed and all of the answers were marked 'no' then enter 'Death.'

"4. If Section III was completed and was marked 'no' enter 'Death.'

"We unanimously determine the sentence to be Death." App. 99–103.

JUSTICE BRENNAN, concurring.

I join the Court's opinion and agree fully with its analysis as to why, under our current death penalty jurisprudence, the death sentence in this case must be vacated. I write separately only because the judgment, which is without prejudice to further sentencing proceedings, does not expressly preclude the reimposition of the death penalty. Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976), I would direct that the resentencing proceedings be circumscribed such that the State may not reimpose the death sentence.

JUSTICE WHITE, concurring.

The issue in this case is how reasonable jurors would have understood and applied their instructions. That is the issue

the Court's opinion addresses, and I am persuaded that the Court reaches the correct solution. Hence, I join the Court's opinion.

CHIEF JUSTICE REHNQUIST, with whom JUSTICE O'CON- NOR, JUSTICE SCALIA, and JUSTICE KENNEDY join, dissenting.

The Court here decides that the sentence imposed by a Maryland jury is constitutionally infirm because the Court cannot be certain that each juror understood the sentencing instructions and charges to the jury. Last Term, in *California* v. *Brown,* 479 U. S. 538 (1987), we reaffirmed our view that the relevant inquiry is not whether an impermissible interpretation of instructions to the jury, however improbable, is literally possible; it is instead "what a reasonable juror could have understood the charge as meaning." *Id.,* at 541. I think the instructions and charges to the jury in this case pass this test, and I would affirm petitioner's sentence as well as his conviction.

I

Petitioner, already serving a 30-year sentence for a murder he committed in 1982, stabbed his cellmate 6 times in the chest and 39 times in the back with a homemade knife. Petitioner had threatened to kill his cellmate several weeks earlier if numerous demands were not met by the prison warden, and on August 6, 1984, he made good on his threat. Evidence at trial strongly suggested that this brutal assault was unprovoked and was initiated while the victim was asleep.

After finding petitioner guilty of first-degree murder, the Maryland jury hearing his case proceeded to the sentencing phase of the trial. As part of the sentencing process, the jury was provided with the standard sentencing form. Although the sentencing form is reproduced in the Appendix to the majority's opinion, I believe it is useful to review the instructions and the charges that confronted the jurors.

Section I of the sentencing form requires the jurors unanimously to determine whether or not several aggravating circumstances existed; the jurors unanimously found that "[t]he defendant committed the murder at a time when he was confined in a correctional institution." App. 99–101. After reaching this decision, the jury moved on to Section II of the form, which began:

> "Based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked 'yes' has been proven to exist by A PREPONDERANCE OF THE EVIDENCE and each mitigating circumstance marked 'no' has not been proven by A PREPONDERANCE OF THE EVIDENCE." Appendix to opinion of Court, *ante*, at 387.

These instructions were followed by seven possible mitigating factors. After each one was the choice "___ yes [or] ___ no"; the jurors checked "no" for each factor, and for the eighth and final question whether "[o]ther mitigating circumstances exist, as set forth below," the jury wrote "none." App. 101–103.

The jury's negative responses, when examined in the light of the directions in Section II, admit of but one reasonable interpretation: the jury *unanimously* found that no mitigating factors existed that should be weighed against the aggravating circumstance that it unanimously determined was present. This is "what a reasonable juror [would] have understood the charge as meaning," and there is absolutely no reason to think that this meaning was not abundantly plain to the jurors acting under these instructions.[1]

_____

[1] The majority attempts, through the backdoor of a footnote, see *ante*, at 380, n. 14, to explain what an individual juror *might* have considered persuasive as a mitigating circumstance. In addition to pointing up the fact that the majority has no evidence to support the hypothetical reading of the sentencing form it imputes to the jury, a review of the mitigating factors offered by petitioner in this case reveals that they were extraordinarily weak. At sentencing, petitioner urged that his "youthful age" of 20

These instructions, which by themselves would serve as an understandable guide to the jury in its deliberations, were accompanied by additional charges from the trial judge. Although the Court ignores several of these charges, I do not think it open to doubt that they reinforce the jury's understanding that it must unanimously reach a decision on each question before proceeding to the next. After distributing the sentencing forms, the trial judge delivered the following charges:

> "Let me remind you that in reaching your determination as to any of the issues raised by the case and presented to you on this sentencing form *your verdict must be unanimous;* that is, all twelve of you must agree.

> .    .    .    .    .

> "Now should you find the existence unanimously and beyond a reasonable doubt of aggravating circumstance number two and mark that yes, then you should proceed to section two, which begins at the top of page two. That provides that based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked yes has been proven to exist by a preponderance of the evidence, and each mitigating circumstance marked no has not been proven by a preponderance of the evidence. Again I stress that *your finding as to mitigating circumstances must be unanimous,* that is you must all agree.

> .    .    .    .    .

> "*Again let me stress the requirement of unanimity,* that is your finding under section two and your findings

should weigh in his favor, and argued that, despite the fact that he had murdered twice, it was "unlikely that [he would] engage in further criminal activity that would constitute a continuing threat to society." 310 Md. 33, 57, 527 A. 2d 3, 14 (1987). Petitioner also asserted as an extenuating circumstance the failure of the State effectively to reform him. In view of the vacuity of these proffered mitigating factors, it is hardly surprising that the jury would unanimously reject them.

under section three must be one in which all twelve of you agree.

.        .        .        .        .

"Again let me remind you of the burdens of proof as I have defined them for you and the requirement that *your verdict or your decision with regard to any of these items must be unanimous.*

.        .        .        .        .

"Let me remind you that . . . as you consider each of the circumstances you must indicate yes or no, *however your unanimous decision falls.*" *Id.*, at 69, 70–71, 73, 74, 95 (emphasis added).

Over and over again, the trial court exhorted the jury that *every* determination made on the sentencing form had to be a unanimous one. This repeated emphasis, when combined with the instructions on the face of Section II itself, simply had to alert the jury to the requirement of unanimity. To conclude otherwise, as the Court does, applies to the deliberations of jurors and the instructions of judges a requirement of freedom from any ambiguity more suitable to mathematics or the physical sciences than to the affairs of human beings.[2]

I am also more than a little uncertain about the standard the majority purports to employ in finding that the jury may not have understood its instructions as intended. In *California* v. *Brown*, 479 U. S. 538 (1987), we held that the correct inquiry in this situation is "'what a reasonable juror could have understood the charge as meaning.'" *Id.*, at 541, quot-

---

[2] The Court seems to derive support from the fact that the Maryland Court of Appeals has recently modified its sentencing form, see *ante*, at 381–383. While any clarification in the form is of course welcome, the amendment is of no legal relevance to our decision today. As discussion at oral argument suggested, a sentencing instruction that is constitutionally acceptable may be improved in any number of ways. Tr. of Oral Arg. 11–12. Our determination here is only whether the sentencing instructions and the jury charges submitted in this case were permissible.

ing *Francis* v. *Franklin*, 471 U. S. 307, 316 (1985); see also *Sandstrom* v. *Montana*, 442 U. S. 510, 516–517 (1979). Thus, in *Brown* we found that a reasonable juror would reject the construction of the jury charge advanced by the defendant, and would instead understand that the trial judge's instruction not to rely on "mere sympathy" was "a directive to ignore only the sort of sympathy that would be totally divorced from the evidence adduced during the penalty phase." 479 U. S., at 542. Similarly, in *Jurek* v. *Texas*, 428 U. S. 262 (1976), a majority of the Court concluded that the issues arising in the Texas sentencing proceeding "have a common-sense core of meaning and that criminal juries should be capable of understanding them." *Id.*, at 279 (WHITE, J., concurring in judgment) (agreeing with joint opinion by Stewart, Powell, and STEVENS, JJ.). *Jurek* demonstrates that the interpretation a reasonable juror would give to instructions from the trial court is the determinative element in this Court's review.

For this reason, the Court's reliance on *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982), is misplaced. The issue here is not whether the jurors were permitted to hear all the extenuating evidence petitioner cared to present; they undoubtedly were. Rather, as in *Brown* and *Jurek*, the question is whether a reasonable juror operating under the trial court's instructions would have considered this evidence of mitigating circumstances in a constitutional manner. In the present case, would a reasonable juror understand that, to mark "no" to each mitigating factor on the sentencing form, all 12 jurors must agree? The language of Section II of the form, when coupled with the repeated instructions from the trial judge, leaves no doubt that the answer is in the affirmative.

The Court states that "[b]ecause we have no reason to believe that the jury also arrived at" the proper interpretation of the sentencing form, petitioner's sentence must be vacated and his case remanded for resentencing. *Ante*, at 369. The

Court also proposes that "[u]nless we can rule out the substantial possibility that the jury may have rested its verdict" on an improper construction of the sentencing instructions and jury charges, petitioner's sentence must be set aside. *Ante,* at 377. This formulation obscures considerably what I view as the correct standard set forth in *Brown.* Short of ordering a separate trial to investigate the knowledge of each juror and the discussions among all 12, I can envision no method by which the court can ever attain the level of certainty on which the majority insists. Jury deliberations are by nature secret, and the mental processes of individual jurors equally recondite. To demand this degree of assurance in conducting judicial review of jury proceedings would establish a standard which can never be satisfied.

As the preceding discussion indicates, if the "reasonable juror" standard is employed, the instructions on the sentencing form and the charges given to the jury in this case are constitutionally unexceptionable, and petitioner's sentence should be upheld.

## II .

Since the majority finds dispositive petitioner's argument that the jurors may not have understood the unanimity requirements of the sentencing instructions and jury charges, it does not reach the second issue in the case. See *ante,* at 384, n. 16. Because I would reject the challenge to the instructions, I must continue on and deal with petitioner's claim that the trial judge improperly allowed into evidence statements concerning the personal characteristics of the victim, Paul Brown, in violation of our recent decision in *Booth* v. *Maryland,* 482 U. S. 496 (1987). Although petitioner failed to object at trial to the introduction of this evidence,[3] the Maryland Court of Appeals nonetheless found that the information

---

[3] Petitioner did, however, challenge the Maryland Court of Appeals' decision on the admissibility of the evidence about the victim in his petition for certiorari and in his brief. See Pet. for Cert. 8–10; Brief for Petitioner 21–24.

about Brown did not constitute a proscribed victim impact statement. The issue is thus properly before this Court, see *Orr* v. *Orr*, 440 U. S. 268, 274–275 (1979); *Illinois* v. *Gates*, 462 U. S. 213, 218, n. 1 (1983); *McGoldrick* v. *Compagnie Generale Transatlantique*, 309 U. S. 430, 434–435 (1940), and I would uphold the Court of Appeals' determination.

Attached to the Maryland Division of Parole and Probation's investigation report of the crime was a memorandum to the State's Attorney, which summarized an interview conducted by a caseworker with the victim's brother and sister-in-law. After petitioner's counsel informed the court that he had read the memorandum and did not object to its admission, the trial judge allowed it into evidence. In its entirety, the memorandum stated:

> " 'Paul and Thomas Brown came from a family of six. At a very young age they were removed from their parents *[sic]* custody because of neglect and placed in separate foster homes. (Removal by the Department of Social Services was prompted by Paul being hospitalized at age 4 for anemia and malnutrition).
>
> " 'Paul was a hyperactive child and hard to handle which resulted in a lot of beatings from his various guardians. He ran away constantly from the various homes in which he had been placed. After a while Paul, at the age of 15, just started living on the streets. He was eventually sent to the Maryland Training School for Boys. Paul never really had a home or a family as such. "I (Thomas Brown) tried to keep in touch with Paul by writing and visiting him whenever possible. I always had good homes and a good life and always felt so guilty that there was nothing I could do to help Paul. After all, I was only one year older than he."
>
> " ' "Paul was a good person who had a tough life, a lot of bad breaks, no family, no home, nobody to really give him a chance. I sometimes think he felt more secure in prison, because he had no one on the outside. Sure, he

committed crimes, but he wasn't violent. He did what he had to do to survive and he got involved with a lot of bad people." '" 310 Md. 33, 72, n. 14, 527 A. 2d 3, 22, n. 14 (1987).

Several points should be made about this memorandum. First, it did not purport to be, and the Maryland Court of Appeals found that it did not fall within the statutory requirements of, a victim impact statement under Maryland law. See *ibid.;* see also Md. Ann. Code, Art. 41, § 4–609(c) (1986). The statements summarized in the memorandum did not describe the effect of the murder on the family and friends of the victim. Nor did the memorandum contain opinions and characterizations by Paul Brown's brother and sister-in-law of the crime. At most, this thumbnail sketch of the victim's difficult childhood and frequent encounters with correctional authorities gave the jury a quick glimpse of the life petitioner chose to extinguish.

I joined the dissents in *Booth* v. *Maryland, supra,* at 515 and 519, and continue to believe that that case was wrongly decided. Virtually no limits are placed on the mitigating evidence a capital defendant may introduce concerning his own history and circumstances, yet the State is precluded from demonstrating the loss to the victim's family, and to society as a whole, through the defendant's homicide. If a jury is to assess meaningfully the defendant's moral culpability and blameworthiness, one essential consideration should be the extent of the harm caused by the defendant. In large measure, the Court's decision in *Booth* prevents the jury from having before it all the information necessary to determine the proper punishment for a first-degree murder.

But even if I were to accept the majority's rationale in *Booth*, I would still find that the statements about the victim summarized in the present memorandum were correctly admitted into evidence. The victim impact statements ruled inadmissible in *Booth*, in addition to containing information about the elderly couple killed by the defendant, also in-

cluded substantial material concerning the effect of the crime on the victims' family and friends, the loss to the community, and the family's perceptions of the defendant. By contrast, the summary admitted here gave only the barest of details about Paul Brown himself and no information at all about the impact of his death on others. I do not interpret *Booth* as foreclosing the introduction of all evidence, in whatever form, about a murder victim, and would thus conclude that the trial court did not commit error in admitting the summary in this case.