No. 90–6371 (A–275). RODRIGUEZ *v.* COLORADO. Sup. Ct. Colo. Application for stay of execution of sentence of death, presented to JUSTICE WHITE, and by him referred to the Court, denied. Certiorari denied. 

JUSTICE MARSHALL, dissenting.

In both *Mills* v. *Maryland*, 486 U. S. 367 (1988), and *McKoy* v. *North Carolina*, 494 U. S. 433 (1990), we vacated death sentences based on jury instructions that, reasonably construed, prevented the respective juries from considering any mitigating factors they did not unanimously find to exist. Because I believe that the in-

structions delivered to the jury in this case cannot be squared with *Mills* and *McKoy*, I would grant the application for stay and the petition for certiorari.

I

Petitioner was convicted of murder and sentenced to death. At the penalty phase of petitioner's trial, the trial court instructed the jury that any aggravating factors found to exist should be weighed against any mitigating factors found to exist. Instruction No. 21 explained in pertinent part:

> "If in the first two steps of your deliberations you have made *unanimous findings* that the prosecution has proven beyond a reasonable doubt that one or more aggravating factors exist and that no mitigating factors exist, or *that a mitigating factor or factors exist*, you must now decide whether the prosecution has proven that any factors in mitigation do not outweigh the aggravating factor or factors." 794 P. 2d 965, 997 (Colo. 1990) (emphasis added).

In *Mills* v. *Maryland, supra*, we addressed the constitutionality of instructions requiring juror unanimity on mitigating factors. We concluded that such instructions violate the cardinal principle of our capital jurisprudence that "'the sentencer may not . . . *be precluded from considering* "any relevant mitigating evidence."'" 486 U. S., at 374–375, quoting *Skipper* v. *South Carolina*, 476 U. S. 1, 4 (1986), in turn quoting *Eddings* v. *Oklahoma*, 455 U. S. 104, 114 (1982). In *Mills*, an impermissible juror unanimity requirement was imposed by a jury verdict form stating: "'Based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked "yes" has been proven to exist . . . .'" 486 U. S., at 387. *McKoy* v. *North Carolina, supra*, presented a similar situation. In *McKoy*, the jury had been instructed both orally and in writing that it had to make unanimous findings on the existence of mitigating factors before proceeding to consider them. 494 U. S., at 436. Applying *Mills*, we vacated McKoy's death sentence.

Instruction No. 21 in the present case suffers from the infirmity condemned in *Mills* and *McKoy*. As noted, Instruction No. 21 directed the jury that if it "made *unanimous findings* . . . that one or more aggravating factors exist and that no mitigating factors exist, *or* that a *mitigating factor or factors exist*," it should pro-

ceed to weigh the aggravating factors against the mitigating factors. The phrase "unanimous findings" can be read only to have modified both "aggravating factors" and "mitigating factors." For the instruction to have been constitutional, the jury would have to have read the pertinent language in Instruction No. 21 as permitting it to weigh mitigating factors if it made *nonunanimous* "findings . . . that a mitigating factor or factors exist." Instruction No. 21 clearly does not say this.

The Colorado Supreme Court, however, refused to vacate petitioner's death sentence. Relying on *Boyde* v. *California*, 494 U. S. 370 (1990), the Colorado Supreme Court reasoned that "there was no reasonable likelihood" that the jury would have interpreted the instruction to require juror unanimity on mitigating factors. 794 P. 2d, at 982. I cannot accept that our decision in *Boyde* affects the invalidity of Instruction No. 21 under *Mills* and *McKoy*.

In *Boyde*, this Court examined whether instructions at the penalty phase of Boyde's capital proceeding impermissibly limited consideration of mitigating evidence pertaining to Boyde's character and background. The trial court instructed the jury that, in addition to 10 specific factors to be considered in determining the penalty, the jury could consider " '[a]ny other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.'" *Boyde* v. *California*, *supra*, at 381.

The Court concluded in *Boyde* that even though the instructions did not identify Boyde's deprived background and emotional troubles as relevant considerations, there was no "reasonable likelihood" that the jury felt precluded from considering these factors. Noting the view, "long held by this society," that such factors "would counsel imposition of a sentence less than death," the Court found it unlikely that the jury would have understood the instructions to prevent consideration of such evidence. See 494 U. S., at 382. Additionally, the Court concluded that the context of the proceeding, in which Boyde introduced without objection four days of testimony concerning his background and character, "would have led reasonable jurors to believe that evidence of petitioner's background and character could be considered in mitigation." *Id.*, at 383.

The facts in *Boyde* offer little assistance in resolving this case. Unlike the jury in *Boyde*, the jury in this case could not have been guided either by the evidence introduced or by any "long held" so-

cietal views in attempting to comprehend Instruction No. 21. That instruction indicates that the jury is required to find the existence of mitigating factors unanimously. Clearly, there is no "long held" societal view as to procedural rules of this sort. Rather, the jury's sole source of direction as to the meaning of Instruction No. 21 was the instruction itself. For the reasons I have indicated, there clearly *was* a "reasonable likelihood" that the jury viewed the direction to make "unanimous findings" as applying not only to aggravating factors but also to mitigating factors.

The Colorado Supreme Court reasoned that the jury would not have understood Instruction No. 21 in this way in light of the instructions on aggravating factors. These instructions stated on several occasions that any aggravating factors must be found unanimously, and one instruction required the jury to vote to determine the existence of particular aggravating factors. The court reasoned that the absence of similar repetition in the instructions on mitigating factors and the absence of provisions for voting upon the existence of mitigating factors precluded the jurors from inferring that unanimity was necessary for mitigating factors. 794 P. 2d, at 981–982.

In my view, this assumption is unrealistic. As a matter of convention, we presume that jurors follow jury instructions. See *McKoy* v. *North Carolina, supra,* at 454 (KENNEDY, J., concurring in judgment). Instruction No. 21 required unanimity as to the existence of mitigating circumstances. It is difficult to imagine, then, that the jury would have inferred from the instructions setting forth the unanimity requirement with respect to *aggravating factors* a signal to disavow the clear import of Instruction No. 21.

Nor am I convinced that anything the instructions otherwise said about *mitigating factors* would have prompted the jury to disregard the link between "unanimous findings" and "mitigating factors" in Instruction No. 21. The Colorado Supreme Court suggested that the defect in Instruction No. 21 was cured by "a theme" running through the instructions "that the individual jurors could disagree with respect to the effect they gave to mitigating factors." 794 P. 2d, at 982 (citing Instruction Nos. 15, 21, and 22).[1] However, this "theme" in the jury charge addressed only

---

[1] Instruction No. 15 stated: "If one or more jurors finds sufficient mitigating factor or factors exist that outweigh a specified aggravating factor or factors, then the result is a sentence of life imprisonment." 794 P. 2d 965, 995

the juror's individual autonomy in deciding what weight to attach to a particular mitigating factor. The instructions said nothing to upset the indication in Instruction No. 21 that a juror could weigh a mitigating factor only after it had been unanimously found to exist. Indeed, Instruction No. 21 expressly directed the jury that it first had to find the existence of mitigating factors before weighing could take place. Instruction No. 21 explained that in the *first two steps* of its deliberations the jury was to make "unanimous findings" with respect to aggravating and mitigating factors, and it was not until "the *third step* of [the] deliberations" that the jury was to weigh the aggravating factors against the mitigating factors. *Id.*, at 997 (quoting Instruction No. 21).[2]

A "commonsense understanding" of the instructions in this case, *Boyde* v. *California*, 494 U. S., at 381, confirms that the jury would have attached an unconstitutional meaning to Instruction No. 21. By its plain and natural meaning, Instruction No. 21 imposed a jury unanimity requirement that is incompatible with *Mills* and *McKoy*. As nothing else in the instructions can support the Colorado Supreme Court's intuitive judgment that the jury did not attach that unconstitutional meaning to Instruction No. 21, the instructions are not saved by the *Boyde* test. Because I believe that petitioner's death sentence is constitutionally defective, I would grant the application for stay and the petition for certiorari.

---

(Colo. 1990). This direction was repeated in Instruction No. 21. See *id.*, at 997. Instruction No. 22 added:

"Each of you must also decide for yourself what weight to give each mitigating circumstance that you find exists. Your decision as to what weight to give any mitigating circumstance does not have to be unanimous. You do not have to take the decisions, opinions or feelings of any other juror into account, although you may do so if you wish." *Ibid.*

[2] I also reject the Colorado Supreme Court's suggestion that the infirmity in the instructions might have been cured by defense counsel's plea in closing argument that the jurors "can rely on any factor you wish to return a life sentence . . . [and] [y]ou don't have to be unanimous on those factors." *Id.*, at 982, n. 13 (emphasis omitted). Statements of counsel "are usually billed in advance to the jury as matters of argument" and "generally carry less weight with a jury than do instructions from the court." *Boyde* v. *California*, 494 U. S. 370, 384 (1990). Of course, in some instances an improper argument from counsel may negate a jury instruction that correctly explains to a jury the standards governing its inquiry. Cf. *ibid.* But it is an entirely different matter to presume the contrary: that an argument from counsel properly stating the law to the jury can save a jury instruction that does not.

## II

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would grant the application for stay and the petition for certiorari and vacate petitioner's death sentence even if I did not believe this case otherwise merited review.