Kevin L. HOUGH, Petitioner,

v.

Rondle ANDERSON, Respondent.

No. 3:98 CV 246 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 12, 1999.

John L. Stainthorp, Joey Mogul, People's Law Office, Chicago, IL, for petitioner.

Michael A. Hurdt, Indiana Atty. General, Indianapolis, IN, for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Petitioner, Kevin L. Hough, was convicted of murder in a state court trial conducted in Fort Wayne, Indiana, and was sentenced to death by the judge conducting that trial upon the recommendation of the jury that heard the case. The within petition was filed by counsel in this court on May 13, 1998 and oral argument was heard in Lafayette, Indiana on September 1, 1999. This Court greatly appreciates the high degree of professional competence displayed by appointed counsel for this petitioner.

The extensive state record has been filed and examined by this Court under the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and under the mandates of the Antiterrorism and Effective Death Penalty Act (AEDPA) 28 U.S.C. § 2244(b). Immediate reference is made to the two decisions in this case by the Supreme Court of Indiana, namely *Hough v. State*, 560 N.E.2d 511 (Ind.1990) and *Hough v. State*, 690 N.E.2d 267 (Ind. 1997), *cert. denied*, — U.S. ——, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). This petitioner is now confined on death row at the Indiana State Prison in Michigan City, Indiana in this district.

## I. Factual and Procedural Background

On November 6, 1985, Kevin Hough took his younger brother, Duane Lapp, out for a drive, allegedly looking for marijuana. They parked in an area unfamiliar to Duane and walked in a circuitous path, ending up at 1127 West Wayne Street in Fort Wayne, Indiana, the home of Ted Bosler and Gene Rubrake. Once there, Hough approached Rubrake, who was unloading groceries from his car. Hough and Duane assisted Rubrake in carrying the groceries into the house, then followed Rubrake into the basement, joined by Bosler. Once there, Hough pulled his .45

caliber pistol from his shoulder holster and told Bosler and Rubrake to hit the floor. Rubrake swung at Hough with the television remote control, and Hough shot him in the chest. Bosler dropped to the floor, and Hough shot him in the back as he lay there. Rubrake then appeared to move and Hough shot him again in the face. Hough and Duane started up the stairs, but Hough returned to the basement to retrieve a beer can and the remote control, both of which he thought might have his fingerprints. As he left the basement, Hough stepped on Rubrake's face. Hough then took Duane back to his home, began packing, and moved to Indianapolis with his fiancee, Norene Akers, later that evening.

On April 10, 1986, a two-count information was filed against Hough in the Allen [County, Indiana] Superior Court, along with a affidavit for probable cause filed by Fort Wayne Police detective C.R. Alfeld. Alfeld stated that he had interviewed Duane Lapp on that date and that Duane had told him the facts related above. A judge of the Allen Superior Court found probable cause and issued a warrant for Hough's arrest on April 10, 1986. Although it is not fully reflected in the record[1], it appears that Hough had moved to Florida, but that he waived extradition to return to Indiana. Thus, he was present at the initial hearing on May 19, 1986, at which time he entered a plea of not guilty.

Attorneys Jerry Levendoski and Bruce Cowen were initially appointed to represent Hough, and on June 25, 1986, they filed several motions on his behalf, including a motion "for appointment of a social psychologist to assist in selection of jury," a motion "for appointment of psychologist" to "assist counsel in the development and presentation of Defendant's defense in both phases of the trial," a notice of alibi, and a motion for change of venue. The following day, Hough filed a *pro se* motion for "co-counsel status of defendant" and a

---

1. At the initial hearing, Hough sought the governor's warrant used to extradite him. (Tr. 1375) The transcript of the hearing reflects the fact that Hough waived extradition, and thus no warrant was issued. This is the only mention of the extradition within the record.

motion "to appoint advisory counsel" pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). On July 31, 1986, Judge Alfred Moellering heard arguments on the pending motions, denied the motions for appointment of psychologist and the motion for change of venue, and set the case for trial on October 6, 1986 before Judge Philip Thieme. Judge Thieme recused himself, as did every other judge in Allen County, and the case was eventually assigned to Judge Edward Meyers of the Whitley [County, Indiana] Circuit Court, as a special judge of the Allen Superior Court.

Judge Meyers initially set the trial for January 26, 1987. However, during the period between November 17 and 21, 1986, Hough was tried for the murder of Antoni[2] Bartkowiak in Allen County, and that trial was given significant coverage in the Fort Wayne media. Thus, Hough's attorneys requested a change of venue on December 10, 1986. Judge Meyers denied the request for change of venue, but ordered that the jury be pulled from Marion County, Indiana. At a hearing on January 26, 1987, Hough requested that he be allowed to act as co-counsel with his attorneys, as he felt they had not adequately represented him in the Bartkowiak trial. Judge Meyers allowed attorney Levendoski to withdraw, and attorney Bruce Snyder was appointed to assist attorney Bruce Cowen with Hough's representation. After another continuance, the jury was selected in Indianapolis on May 11, 1987, and the trial commenced with that sequestered jury on May 12, 1987 in Fort Wayne.

During the prosecution's case-in-chief, the state presented evidence from the officer at the scene, the medical examiner, and a ballistics expert who testified that the shell casings found at the scene had been shot from the same gun from which several shells recovered from Norene Akers' apartment were shot. The state also called Carolyn Grable, Rubrake's sister, and some of Rubrake and Bosler's neighbors, including the neighbors who found the victims the following morning. Most damaging, though, was the testimony of Duane Lapp, who provided his eyewitness account of the murders to the jury.

After Duane testified, the state called Don Maley to testify. Maley testified that on the evening of November 6, 1985, he and Hough had been out walking around at approximately 4:30 p.m. Maley testified that Hough had walked past the house at 1127 West Wayne and had approached it, saying he needed to retrieve some items for his cousin, then came back, saying there were people at the house and he would need to go back later. Maley further testified that Hough visited him later that evening. Hough went into Maley's residence and asked for some beer, saying that he had shot some guys and that Duane was shaken up. Maley also testified that Hough stated he had taken some rings from his victims. During the cross-examination of Maley, Hough's counsel brought up for the first time before this jury Maley's involvement in the murder of Antoni Bartkowiak, and his plea agreement in that case. The prosecutor asked to approach the bench, and during the bench conference, suggested that Hough's counsel was opening the door to bring in evidence of Hough's own involvement in the Bartkowiak murder.[3] Hough's counsel

---

2. Mr. Bartkowiak's first name is spelled several different ways in the record, but it appears that "Antoni" is the correct spelling.

3. The full discussion at the bench between Sims, the prosecutor, and Snyder, defense counsel, was as follows:

Mr Sims: Your Honor, it might be a good idea to ... we don't have any problem, but if he opens the door, I think it would cause a ... maybe it would open up the

door to his client and this witness. This witness was active at the first murder. He plead guilty to an unrelated burglary, a breaking and entering, aiding ... by the way, the burglary he plead guilty to happened like a month before, it didn't have anything to do with the murder but, the point is, he was present at a murder. He was present with John Fernandez and this defendant and I think what Bruce may be getting into may be opening cross examination as to whether his client, sitting at

agreed that he wanted to bring in the plea agreement and Maley's involvement in the Bartkowiak murder, and proceeded to cross-examine Maley about the plea agreement, but other than mentioning that Maley had been involved in another murder, did not discuss the facts of the Bartkowiak case, or even mention the name Bartkowiak. When the prosecutor took Maley back on redirect, though, his first question was "[a]s part of your plea agreement, did you not also have to testify against the defendant killing Antonio Bartkowiak on October 27, 1985?" (Tr. 920). And when Maley answered yes, Sims continued "Were you present when he killed him?" On the following page, after discussing the plea agreement, Sims returned to the Bartkowiak murder, asking Maley "[d]id an execution occur in the basement of that house?" (Tr. 921–22). At that point, defense counsel objected to Sims' effort to introduce the facts of the prior murder, and the discussion went no further, but the subject had been introduced.

Hough testified on his own behalf during the guilt phase that he had taken Duane out to find some marijuana, but had not visited the residence at 1127 West Wayne, and that he had attended a party where he consumed marijuana and beer prior to starting for Indianapolis late in the evening. He specifically denied any involvement in the murders. On cross examination, the prosecutor immediately raised the Bartkowiak murder, which Hough also denied committing, although he admitted that he had been convicted of that murder. The prosecutor mentioned how Bartkowiak had been handcuffed when he was shot, at which time Hough's counsel objected and

the prosecutor moved on, but again, the some of the Bartkowiak facts were presented to the jury. On redirect, Hough's counsel allowed Hough to bring out a few more facts on the Bartkowiak case, which led the prosecutor on sur-cross to delve even further into that murder. Finally, Hough's counsel objected, and the judge sustained the objection.

The defense put on Norene Akers after Hough, who testified about their move to Indianapolis and about Hough's practice of saving the casings from fired bullets, then rested. The state did not present any rebuttal evidence, and so the judge instructed the jury and sent them to deliberate. The jury returned with a verdict two hours later, finding Hough guilty on both counts. Thus, the trial moved into the penalty phase.

Prior to the jury being seated to begin the penalty phase, defense counsel moved in limine to bar reference to the Bartkowiak murder, other than the stipulated evidence from the Clerk of the Allen County Court of the conviction in that murder. The judge overruled that motion without argument or discussion and the jury was seated. After the prosecution moved that all evidence from the guilt phase of the trial be admitted, to which no objection was made, the Clerk of the Court was the first witness for the prosecution in the penalty phase, and she brought the order book entries of the conviction and sentencing in the Bartkowiak case, as well as copies of the two information counts in that case and the affidavit for probable cause. All of those items were admitted without objection from defense counsel, even though the affidavit for probable cause laid out in great detail the specific facts of the Bartkowiak murder.[4] The

that table, was in fact, present at another murder and convicted for it.

Mr. Snyder: I know.

Mr. Sims:    Do you want to get that out?

Mr. Snyder: (inaudible.)

Mr. Sims:    Do you want to bring it out?

Mr. Snyder: You betcha.

Mr. Sims:    Okay, that they both did the other murder?

Mr. Snyder: Urn-hum.    (Indicating affirmative.)

Mr. Sims:    Okay, I mean ... I just wanted to say, you know, you're opening ... the fact ...

Mr. Snyder: I know.

Mr. Sims:    Okay, alright.

(Tr. 899–900)

**4.** On pages two and three of the affidavit for probable cause, Detective Alfeld, also the lead detective in the Bosler/Rubrake murders, set forth the following description of the Bartkowiak murder:

only other evidence presented by the state was the brief testimony of Detective Alfeld, who testified that he had acted as the case agent, sitting with the prosecution, during the Bartkowiak trial, and that he had been present when Hough was convicted of the Bartkowiak murder.

Hough's counsel presented several of Hough's juvenile probation officers and copies of Hough's juvenile record and various psychological reports made about him while he was a juvenile. Additionally Hough's natural father and his two full sisters testified about him and about their mother. The gist of this testimony was that Hough's mother had been physically and emotionally abusive, thus providing some explanation for Hough's later behavior. No other significant testimony was presented by defense counsel to show the existence of a mitigating factor.

During the closing arguments in the penalty phase, the prosecutor made several references to the specific facts of the Bartkowiak murder, called Hough a "sociopathic killer" and referred to him as a wolf who was killing the sheep of the Fort Wayne community, all without objection from the defense. The defense counsel started with the suggestion that Hough might only get thirty years on each conviction to run concurrent to his sixty year sentence in the Bartkowiak murder and that he did not commit robbery if he took the rings because Bosler and Rubrake were already dead, and thus were not intimidated. He briefly argued that Hough's home environment fell under the mitigating circumstance of "other factors to consider," then made an emotional appeal against the death penalty. The jury left the courtroom to deliberate at 4:25 p.m. and returned at 5:40 p.m. with a unanimous recommendation for the death penalty.

At sentencing on June 11, 1987, Judge Meyers asked Hough if he was "satisfied with the manner in which your attorneys of record represented you in this case?" (Tr. 545). Hough responded "yes," and Judge Meyers further asked if Hough felt there was "anything that your attorneys failed to do in representing you here?" to which Hough responded, "I think it would have been nice if we'd had our own experts." Hough's counsel then made a brief statement, in which he returned to the theme that he felt the evidence did not

Juan Fernandez [Joyce Hough's fiancé] further related that in further conversations with Donald J. Maley and with Kevin Lee Hough, he learned the following regarding what had happened inside the 2136 Oakley Street residence on the night of October 27, 1986: The defendant, Kevin Lee Hough, and Donald J. Maley went to the door of the residence at 2136 Oakley Street. That the victim, Antoni Roman Bartkowiak, answered the door and at that time Kevin Lee Hough stuck a .45 caliber handgun into the stomach of the victim and backed him into the residence. Kevin Lee Hough told Juan Fernandez that at this time he told Donald J. Maley, to hold the .25 caliber semi-automatic that he was carrying against the victim's head and hold him there. They then directed the victim to lay down on the floor where they used a pair of handcuffs that they had brought with them and handcuffed the victim's hands behind his back. Kevin Lee Hough discovered a shotgun and shells in the residence. He loaded the shells into the shotgun and handed it to Donald J. Maley and instructed him to hold this against the head of the victim, and to use it if necessary. Kevin Lee Hough then proceeded to ransack the house. At this point Kevin Lee Hough interrogated the victim in regards to a quantity of cocaine which he believed was located in the residence. The victim denied any knowledge of any cocaine. Kevin Lee Hough then used a cattle-prod type device, called a "hotshot" to inflict electric shots on the victim.

Kevin Lee Hough and Donald J. Maley, then took the victim, Antoni Roman Bartkowiak, to the basement of the residence. On their way to the basement, Kevin Lee Hough directed Donald J. Maley, to give him his .25 semi-automatic handgun and to go upstairs to get a cushion from the couch to muffle the sound. The victim was forced to lean over a rollaway bed. Kevin Lee Hough took the cushion from the couch that had been brought down by Donald J. Maley and placed it over the back of the victim's head. He then took the .25 caliber semi-automatic handgun and shot the victim using the cushion to muffle the sound.

entirely support the verdict and asked that the judge not follow the jury's recommendation because of the inconsistencies in the evidence. The prosecutor asked the judge to follow the jury's recommendation and briefly introduced the families of Bosler, Rubrake, and Bartkowiak, all of whom were in attendance. Judge Meyers then pronounced his decision from the bench, sentencing Hough to death for the murders of Bosler and Rubrake, while attempting robbery, and after having been convicted of the murder of Bartkowiak. The text of his decision is set forth in the footnote below[5].

After Judge Meyers denied Hough's motion to correct errors, Hough appealed his conviction and sentence to the Indiana Supreme Court, again represented by Bruce Snyder and Bruce Cowen, his counsel at trial. On appeal, they raised six issues:

1. violation of Hough's constitutional rights when members of the victims' families stood up to be introduced during the sentencing hearing, and inclusion in the presentence report of letters and opinions of the victims' family members;

2. refusal of the court to appoint experts to assist Hough in the preparation of his case;

3. alleged improper foundation and chain of custody of items of evidence;

4. permitting the application for death penalty to contain an allegation of robbery;

5. error in using statutory aggravating circumstances against him during sentencing; and

6. erroneous jury instructions used during sentencing.

*Hough v. State,* 560 N.E.2d 511, 513 (Ind. 1990). In his plurality opinion, Justice Pivarnik held that the victim impact evidence did not violate the proscription in *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) because the letters from the family members did not discuss the murders' impact on them and because there was no indication that the judge considered the letters or the families' presence at sentencing. 560 N.E.2d at 515. Justice Pivarnik further wrote that the trial court's decision to deny the

---

**5.** This has not been an easy decision. I've never been a componant [sic] of the death penalty. By the same token, I've never been an oponent [sic]. I've read a lot of articles on the death penalty. Why it shouldn't be permitted. I've read the editorials that have appeared in the Journal Gazette, and the letters to the editor and my feelings have vascillated [sic] back and forth, from case to case. I know there have been cases where the Judge has refused to follow the jury's recommendation, even when the jury has recommended that the death penalty not be imposed. There's one thing that stand out, at least in my mind, now that I sit in the position that the other Judges have sat in, and that is that in my opinion, as humble as it may be, there's nothing so precious in this life as life itself. And I'm certain that Mr. Rubrake and Mr. Bosler felt the same way. It occurs to me that you do not feel that way either about your own life or the life of others in that in this particular case, you have, in my opinion, as was the jury's opinion, deliberately and in cold blood, killed or executed two people and in a prior case, executed another person. I can't see how, in this type of situation, you can expect this Court not to follow the jury's recommendation. I think that you forfeit

your right to live when you commit acts such as these. All the arguments against the death penalty seem to pail [sic] under these circumstances. You have no right to live in this society that holds life above everything else. I don't think that you have even the right to live in the prison type society for there may be someone, an inmate, that values his life in that prison, and I'm not certain that it would be secure with you living in that prison type society. The Court finds as did the jury, that there are aggravating circumstances existing, that outweigh any mitigating circumstances. Those aggravating circumstances being that you committed the murders of Martin Eugene Rubrake and Theodore Bosler while committing or attempting to commit a robbery and that you had been convicted of murder of Antonio Bartkowiak before. Therefore the Court will follow the recommendations of the jury and I guess for the opponents of the death penalty, I would say this, that in my opinion, I consider this execution, should it ever occur, to be a justifyable [sic] homicide. Let's say that it's being done in self defense. In defense of mankind. Therefore you are sentenced to die . . . .

(Tr. 555–57)

appointment of experts was not an abuse of discretion, as Hough had made no suggestion of insanity, requiring the appointment of a psychologist under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and there was no showing as to what an expert could show beyond what had been presented in court. *Id.* at 516–17. The Court found that the evidence supported the allegation that Hough had committed the murders while attempting to commit robbery, and that the evidence supported the three aggravating factors found by Judge Meyers. *Id.* at 518–19.

The final contentions raised by Hough were first raised on appeal, and could have been deemed waived by the Indiana Supreme Court, but Justice Pivarnik found them lacking on the merits. *Id.* at 519. Hough had argued that the trial court inappropriately allowed consideration of two similar aggravating circumstances, IND.CODE 35–50–2–9(b)(7) and (b)(8), which state respectively that "the defendant has been convicted of another murder" and that "the defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that other murder." The plurality held that for purposes of aggravator (b)(7), the defendant need not be convicted of an unrelated murder prior to the commission of the present murder, so long as the unrelated murder was committed prior to the present murder. In this case, it was appropriate to allege both (b)(7) and (b)(8) because Hough killed Rubrake and Bosler at the same time, giving rise to (b)(8), and because he had been convicted of killing Bartkowiak prior to killing Rubrake and Bosler, giving rise to the (b)(7) aggravator. *Id.* Hough also argued only on appeal that the jury instructions misstated the "level of culpability required for the jury to recommend the death penalty," *id.* at 520, but the plurality did not find that the erroneous insertion of the word "knowingly" in the aggravating circumstance that Hough intentionally killed Bosler and Rubrake while attempting to commit robbery was so prejudicial

that it violated due process, given that the court also read the statutory aggravator, which correctly stated the law, and that the prosecutor highlighted Hough's intentional manner of murdering the victims. *Id.*

Thus the court affirmed the trial court on both the conviction and the sentence. Justice Givan concurred in Justice Pivarnik's opinion, and Chief Justice Shepard concurred with an opinion highlighting the lack of fundamental error on the victim impact issue. *Id.* at 521. Justice DeBruler dissented as to the sentence based on his belief that aggravator (b)(7) requires that the defendant be convicted of another murder prior to committing the present murder and on the lack of any explanation of what mitigating circumstances might have been considered by the trial court. *Id.* Justice Dickson also dissented on the sentence due to the lack of explanation of mitigating factors and because he felt the erroneous instruction required a remand unless the court could "rule out the substantial possibility that the jury may have rested its verdict on the 'improper ground,'" citing *Mills v. Maryland,* 486 U.S. 367, 377, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). *Id.* at 522.

After the Indiana Supreme Court issued its opinion affirming the trial court, Hough obtained new appointed counsel, Kevin Likes and David Doughten, and filed his petition for post-conviction relief ("PCR") in the Allen Superior Court. Judge Meyers maintained jurisdiction over the case as special judge of the Allen Superior Court. The PCR petition made the following claims for relief: first, that the Indiana death penalty act was unconstitutional on its face and as applied because it fails to adequate guide the sentencer as to mitigating circumstances, because it shifts the burden of proof to the defendant to negate aggravators, because it gives the jury unguided discretion, and for several other reasons; second, that Hough was denied effective assistance of counsel because his counsel failed to object to the use of the

term "recommendation," because counsel failed to object to the court's instructing the jury that he was not bound by their recommendation, that counsel failed to object to the introduction of all trial evidence into the penalty phase, that counsel failed to object to the admission of the affidavit for probable cause from the Bartkowiak murder, that counsel failed to obtain a psychologist for purposes of mitigation evidence, that counsel failed to object to numerous improper comments by the prosecutor, that counsel failed to object to the prosecution's eliciting of facts related to the Bartkowiak murder, that counsel failed to object to the court's instructing the jury on all mitigating factors, that counsel failed to object to victim impact testimony, that counsel failed to object to the probation department's recommendation of the death penalty, that counsel failed to move the state to elect which aggravating factor applied to the Bartkowiak murder, and that counsel failed to properly preserve as error meritorious issues; third, that Hough was denied due process due to the use of several improper jury instructions; fourth, that the trial court's failure to explain the mitigating factors considered violated the Fifth, Eighth and Fourteenth Amendments to the Constitution; fifth, that Hough was denied effective assistance of appellate counsel because appellate counsel failed to challenge the constitutionality of the death penalty scheme in Indiana, prosecutorial misconduct during closing argument in the penalty phase, the use of victim impact evidence in the penalty phase, the use of the term recommendation in the penalty phase, the improper weighing of the evidence in the penalty phase, the improper jury instructions, and the use of two aggravators for the killing of Bartkowiak where only one death occurred; and sixth, that the combination of all error were so prejudicial as to deny Hough fundamental due process.

The state answered the petition for PCR, arguing that many of the issues raised in the petition were waived because they had not been raised on direct appeal, and to the extent the allegations were not waived, they were without merit because the petition did not cite any authority to support the claims made. This included the arguments concerning ineffective assistance of counsel. The state then asked the court to set a briefing schedule for summary judgment as no issues of fact existed which would require an evidentiary hearing. The court did set a briefing schedule, and the state moved for summary judgment on the petition. In the brief in opposition to the motion for summary judgment, Hough's counsel only listed the need for a psychologist to support the existence of mitigators as a genuine issue of material fact. Thus, in their reply brief, the state suggested that no real issue of fact existed, allowing the court to grant summary judgment in its favor. The court did grant summary judgment in favor of the state, adopting almost verbatim the state's brief in support of its motion for summary judgment, and finding most of the issues raised in the petition waived or barred by res judicata, and finding the remaining issues without merit.

Hough appealed the decision of the trial court on PCR to the Indiana Supreme Court as well. That court again affirmed the trial court. *See Hough v. State,* 690 N.E.2d 267 (Ind.1997). Justice Selby wrote for the unanimous court in deciding that none of the six issues raised on appeal formed the basis for relief. The issues raised on appeal by Hough were:

1) Did defendant receive ineffective assistance of trial and appellate counsel? 2) Did the post-conviction court err in failing to grant an evidentiary hearing? 3) Did the trial court fail to consider relevant mitigating evidence? 4) Was defendant deprived of a fair trial due to erroneous jury instructions? 5) Did the alleged errors at trial act cumulatively to deny defendant a fair trial? 6) Is Indiana's death penalty statute unconstitutional?

690 N.E.2d at 269. The court first addressed Hough's claim of ineffective assistance of both trial and appellate counsel,

applying the test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Several of the ineffective assistance claims related to defense counsel's failure to make various objections at trial, and for those claims, the court followed its decision in *Potter v. State*, 684 N.E.2d 1127 (Ind.1997), stating that to prove the failure to object rendered counsel ineffective, "defendant must show that the object would have been sustained and that he was prejudiced by the failure to object." 690 N.E.2d at 270, citing *Potter*, 684 N.E.2d at 1132. Justice Selby then went through each of the ineffective assistance claims, finding that objections would not have been sustained on the prosecutor's use of the word "recommendation," on the admission of the probable cause affidavit, on the improper closing arguments, on the reading of the list of all of the statutory mitigating factors, on the victim impact evidence, on the reference to his conviction for both murder and felony murder in the Bartkowiak case, and on the evidence of his juvenile record and the facts of the Bartkowiak case. The court specifically held that evidence of the Bartkowiak case did not amount to prejudice, "as the jury was presented with evidence of three aggravating circumstances, and we do not believe defendant has shown a reasonable probability that the outcome would have been different absent these pieces of evidence." 690 N.E.2d at 272.

The Supreme Court then addresses Hough's contention his counsel was ineffective to failing to procure a psychologist. The court noted that Hough's trial counsel had moved the trial court for appointment of a psychologist, and that in any event, no evidence of prejudice was shown, because there was not "a reasonable probability that, but for the absence of the psychologist, the jury would have reached a different conclusion." *Id.* Hough's counsel also suggested that a genuine issue of material fact existed as to the failure to procure a psychologist. Justice Selby explained that, although ineffective assistance of counsel is generally a mixed question of

fact and law, making the grant of summary judgment with an evidentiary hearing "a bit unusual," where the state accepts as true all of defendant's allegations, such as here, a hearing is not necessary. *Id.* at 273. After considering the affidavit presented by the psychologist, the court held the failure to hold an evidentiary hearing was not error. *Id.*

The court then considered Hough's argument that the trial court committed constitutional error by failing to consider all relevant mitigating factors. Justice Selby wrote that the defendant failed to raise this issue on direct appeal and thus waived it, but because it was part of the ineffective assistance of appellate counsel, the court considered the argument. The court wrote that although the trial court failed to address the mitigating circumstances it considered, it did conclude that the "aggravating circumstances outweighed any mitigating circumstances that exist," and thus the court must have considered the mitigators presented and found them to be outweighed. *Id.* Additionally, the Indiana Supreme Court had considered the trial court's evaluation of aggravators and mitigators on direct appeal and found the sentence appropriate. *Id.* at 274.

The court then considered Hough's argument that several erroneous jury instructions had violated his constitutional rights. The court found that the instructions were not erroneous, and thus did not violate his rights. *Id.* Similarly, because the court did not find error in any of the other claims, it did not find such cumulative error as to deprive him of his rights. *Id.* at 275. Finally, the court addressed Hough's challenge to the Indiana death penalty statute and found that claim lacking as well. Thus, the Indiana Supreme Court affirmed the trial court's denial of the petition for postconviction relief. Although Hough appealed that decision to the United States Supreme Court, certiorari was denied. *See Hough v. Indiana*, ― U.S. ―, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998).

## II. Standard of Review

A claim under 28 U.S.C. § 2254 requires the federal habeas court to ensure that the state criminal conviction was not achieved at the expense of the petitioner's constitutional rights. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), described the role of the federal district courts in habeas proceedings:

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791 (citation omitted).

The Congress of the United States has codified the holdings of *Jackson* and its progeny through the AEDPA, which amended 28 U.S.C. § 2254, in relevant part, as follows:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebut-

ting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

When Congress passed the AEDPA, the standards of review that the court must apply to the merits of a petition for writ of habeas corpus under § 2254 also changed significantly. Section 2254 was further amended in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As such, the AEDPA provides a "new, highly deferential standard for evaluating state court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

It remains basic to this day that claims of constitutional violations must first be fairly presented to the state court, as defined by Justice Scalia in *Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989), and reaffirmed most recently in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In *Moore v. Parke*, 148 F.3d 705 (7th Cir.1998), the Seventh Circuit explained that:

A prerequisite for applying this section is that the state court adjudicated the issue before us on the merits.... [Because] the state courts did not address Moore's sufficiency of the evidence argument on the merits, ... the new stan-

dard of review in AEDPA does not apply.

148 F.3d at 708. However, the court went on to explain that the petitioner must first have "provided the state courts with a full and fair opportunity to review his claims." *Id.*, citing *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The Seventh Circuit has provided the following framework to determine whether a state court has been provided a fair opportunity to consider a petitioner's federal constitutional claims:

> If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim. However, the presence of one of these factors, particularly factors (1) or (2), does not automatically avoid a waiver; the court must consider the specific facts of each case.

*Verdin v. O'Leary*, 972 F.2d 1467, 1473–74 (7th Cir.1992). Petitioner, here represented by able and experienced death penalty counsel, has the burden to establish a basis for federal collateral relief.

### III.   Ineffective Assistance of Counsel

Hough's primary focus, in both his brief and at oral argument, is that he received ineffective assistance of counsel at sentencing. This claim is judged under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on this claim, Hough must establish two elements: first, that counsel's performance fell below an objective standard of reasonably effective representation; and second, that the "deficient performance prejudiced the defense." *Id.* at 687–88, 104 S.Ct. 2052. For the first prong, the petitioner must "identify the

acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. On the second prong, the petitioner must show a "reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

Hough lists seven instances of ineffective assistance of counsel in his petition, namely that a) trial counsel failed to object to the improper, prejudicial, and highly inflammatory statements made by the prosecution in its penalty phase closing arguments, b) trial counsel failed to object to the introduction of improper and prejudicial victim impact evidence at the sentencing hearing, c) trial counsel stipulated to the admission of a highly prejudicial and inadmissible affidavit for probable cause regarding defendant's prior murder conviction, d) trial counsel failed to object to the court's instructions on all the mitigating factors allowed by statute, e) trial counsel introduced numerous prejudicial probation reports into evidence, f) trial counsel failed to object to the use of petitioner's prior murder conviction as an aggravating circumstance in the penalty phase, and g) petitioner was denied effective assistance of counsel by the cumulative effect of trial counsels' performance at sentencing. The court will address each instance in turn.

■   During his closing arguments, the prosecutor made several improper comments, including 1) that the jury would be killing by omission if they did not recommend a death sentence; 2) that the jury would be violating their oaths as jurors if they did not recommend a death sentence; 3) that the jury would be failing to protect civilization if they did not recommend the death penalty; 4) that the nonexistence of a statutory mitigating factor should be

seen as an aggravating factor; 5) that the petitioner was a "sociopathic killer"; 6) that the jury should sentence the petitioner to death to rid Marion County of a bad element; 7) that the jury's failure to give the death sentence would "depreciate" the seriousness of the two murders; 8) that the petitioner would kill in the future if he was not given a death sentence; 9) remarking on the petitioner's lack of remorse, 10) commenting on the robbery petitioner committed in 1976, and 11) arguing the death penalty would stop drug trafficking in Indianapolis. Petitioner raised most, if not all, of these comments in his petition for post-conviction relief,[6] in his ineffective assistance claim. The Indiana Supreme Court treated this as a claim for ineffective assistance for failing to object to prosecutorial misconduct, explaining that the petitioner would only be prejudiced by the misconduct, and the failure to object to it, if the misconduct placed him in "grave peril" under *Lowery v. State,* 640 N.E.2d 1031 (Ind.1994). Justice Selby then explained:

> It is unfortunate that the State, armed with the evidence and the aggravating circumstances that it had, still resorted to potentially inflammatory statements. However, in the context of this trial we do not believe that defendant was placed in grave peril because, even without these remarks, the jury was still confronted with three substantial aggravating factors.

690 N.E.2d at 271. Thus, the court considered the comments and found that the failure to object to them did not prejudice Hough under the *Strickland* standard. This court cannot find that decision to be an unreasonable application of federal law, and thus, no writ can issue on this point.

■ Hough next asserts that his counsel was ineffective for failing to object to the victim impact evidence presented to the judge after the jury had made its recommendation. That evidence took the form

of several letters written by family members of the victims which were included with the presentence report and the introduction of the victims' family members in attendance at the sentencing hearing. The Indiana Supreme Court considered this issue both on direct appeal and on appeal from the denial of post-conviction relief. On direct appeal, the Indiana Supreme Court considered the issue in light of *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), a case decided four days after the sentence was rendered in this case. The Court found that there was no evidence the trial judge had considered the evidence, and that the letters did not discuss the impact on the victims in any event, and thus no error was presented by the admission of the evidence. In its opinion in the post-conviction proceedings, the Indiana Supreme Court held that it was not ineffective assistance to fail to object to the admission of the victim impact evidence, since its admission was not error. Again, the Indiana Supreme Court applied clearly established federal law to the issue, and its determination was not unreasonable. Thus, the petition fails on this ground.

■ Hough next complains of his counsel's failure to object to the admission of the affidavit of probable cause from the Bartkowiak murder and of the copious testimony and comments regarding that murder admitted during the trial without objection. Hough did not place any emphasis on his objection to much of this information until his final brief in this proceeding and his oral argument before this court. Thus, to a certain extent, the court could consider this issue waived because it was not adequately presented to the Indiana Supreme Court. In his appeal from the denial of post-conviction relief, Hough argued that the inclusion of various facts regarding the Bartkowiak murder introduced a non-statutory aggrava-

---

**6.** There is some question as to whether all comments were raised in the state court PCR proceeding. This court will treat all of them as having been raised and addressed by the Indiana Supreme Court's decision for purposes of this opinion.

ting factor to the jury's consideration. Justice Selby wrote that:

> the' jury was instruct to consider only the three alleged aggravating circumstances. Furthermore, there is no indication that this evidence amounted to any prejudice as the jury was presented with evidence of three aggravating circumstances, and we do not believe defendant has shown a reasonable probability that the outcome would have been different absent these pieces of evidence.

690 N.E.2d at 271–72. Hough argues here that the Indiana Supreme Court failed to address the truly egregious nature of the affidavit for probable cause and of the gory details of the Bartkowiak murder repeatedly referred to by the prosecutor. This court agrees that the inclusion of the Bartkowiak facts was quite probably violative of Indiana evidentiary law at the time, and certainly would be now under *Thompson v. State*, 690 N.E.2d 224 (Ind.1997). However, this court is unwilling to say that the Indiana Supreme Court did not consider this issue, especially considering that it issued the *Thompson* opinion one week prior to its opinion on post-conviction relief in this case. If the Indiana Supreme Court did not consider the facts, it was due to Hough's counsel's failure to raise them before that court, thus rendering the issue waived, and if it did consider them, it addressed them in a manner which is not inconsistent with clearly established federal law. In either instance, although this court agrees that the decision of Hough's trial counsel to allow the Bartkowiak facts before the jury quite probably meets the definition of deficient performance, the court must concur with the Indiana Supreme Court that the failure did not prejudice Hough, given the three serious aggravators before the sentencing court. Thus, this court cannot issue a writ on this claim.

■ Hough next claims that the failure of trial counsel to object to the trial court's listing of all seven statutory mitigating circumstances was ineffective assistance of counsel. This court agrees with the Indiana Supreme Court's statement that

"[w]e fail to see what is objectionable, at least as presented in this case, with telling the jury that it can consider any number of factors as mitigating." 690 N.E.2d at 271. The Indiana Supreme Court's decision is not an unreasonable application of federal law, and this court will not grant relief on this issue.

■ Petitioner further argues that the submission by trial counsel of his juvenile records and probation reports to the sentencing jury constituted ineffective assistance of counsel. The Indiana Supreme Court addressed this issue in conjunction with the admission of the Bartkowiak affidavit of probable cause in the text quoted supra. This issue can certainly be seen as a trial tactic of counsel, as counsel admitted the records for the purpose of showing Hough's family background and his criminal behavior as an extension of that background. Justice Selby's opinion addresses this issue in the context of clearly established federal law, and her interpretation is not unreasonable. The petition will be denied on this issue as well.

■ Hough next claims that trial counsel erred in failing to object to the use of the Bartkowiak murder as an aggravating circumstance in the present trial, as he had not been convicted of that crime at the time he committed the Bosler/Rubrake murders, and in fact, had committed the Bartkowiak murder ten days prior to the Bosler/Rubrake murders. This issue was specifically addressed by the Indiana Supreme Court on direct appeal, and that court specifically held that a defendant need not be convicted of the other murder at the time of the commission of the present murder, so long as he was convicted of the other murder prior to his trial on the present murder. 560 N.E.2d at 519. As the Indiana Supreme Court held this was not error, it was not an error for trial counsel to fail to object on this point. In his appeal from the denial of post-conviction relief, Hough did not raise this specific issue, and thus it could be considered waived. Hough did raise in that appeal

the reference to his conviction in the Bart-kowiak case as a conviction for both murder and felony murder, but the Indiana Supreme Court noted that the trial court specified that this constituted a single aggravating circumstance. The Indiana Supreme Court considered this issue in both of Hough's appeals in accordance with Supreme Court law, and that court's decision is not unreasonable. Thus, no relief will be granted on this issue.

█ Hough's final claim of ineffective assistance is that all of the errors cumulatively denied him a fair trial. As this court has not found any instances of ineffective assistance of counsel, it cannot find a cumulative error which would allow relief.

## IV. Prosecutorial Misconduct

Hough argues that in addition to ineffective assistance of his counsel in failing to object to the several inflammatory statements made by the prosecutor during his closing arguments in the penalty phase, those statements form the basis for an independent claim of prosecutorial misconduct. This was not raised as a separate claim before the Indiana courts, either on direct appeal or in post-conviction relief, but it was considered, and rejected, as part of petitioner's ineffective assistance of counsel claim in his petition for post-conviction relief. This court has similarly considered and rejected this claim as part of Hough's ineffective assistance of counsel claim. Like the Indiana Supreme Court, this court finds that, although the prosecutor's remarks were excessive, they did not place Hough in "grave peril." Although this claim is waived because it was not raised as a separate issue before the Indiana Supreme Court, this court also finds that the claim is lacking on the merits, and thus no writ will issue thereon.

## V. Appointment of Psychological Expert

█ Early in the case, Hough's counsel requested a psychological expert to assist in planning his defense for trial and for sentencing. The state court judge denied that request as exploratory and not re-quired under the Constitution. Hough raised this issue both on direct appeal and in his post-conviction relief petition. On direct appeal, the Indiana Supreme Court considered Hough's request in light of *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a state provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." 560 N.E.2d at 516, citing *Ake*, 470 U.S. at 74, 105 S.Ct. 1087. The Indiana Supreme Court found that Hough's request did not fall within the boundaries of *Ake*, and thus the decision to deny the appointment of an expert was within the trial court's discretion. *Id.* At trial, there was never any showing made by Hough to suggest that his sanity was a factor, either for trial or for sentencing. Although the affidavit provided by a psychologist for the post-conviction relief suggested that an expert opinion might have provided some assistance to the jury in putting Hough's family background into context, this court cannot say that the lack of a psychiatrist's testimony rendered the sentencing fundamentally unfair. Thus, no relief can be granted on this claim.

## VI. Penalty Phase Jury Instructions

█ During the penalty phase, the trial court instructed the jury regarding mitigating circumstances as follows:

> You may recommend the death penalty only if you find, one, that the State has proved beyond a reasonable doubt that at least one of the aggravating circumstances exists, and two, that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances. You may consider all the evidence introduced at the trial resulting in the defendants conviction of murder, together with any new evidence presented at this hearing. The Court is not bound by

996

your recommendation. If the State failed to prove beyond a reasonable doubt the existence of at least one aggravating circumstance or if you find that any mitigating circumstances outweigh the aggravating circumstances, you should not recommend the death penalty. If the State did prove beyond a reasonable doubt the existence of one aggravating circumstance and you further find that such aggravating circumstance outweigh any mitigating circumstances, you may recommend the death penalty be imposed.

(Tr. 1346). Although this instruction accurately states the law, it also misstates the law in a few key respects: it states that if the mitigating circumstances outweigh the aggravating circumstance, the jury should not recommend the death penalty, and it suggests that the jury must find any mitigating circumstances beyond a reasonable doubt, both of which statements are incorrect. Hough's counsel did not object to this instruction at trial, nor did they raise this issue on direct appeal. On post-conviction relief, Hough raised this issue for the first time. The Indiana Supreme Court noted that any argument about the jury instructions was waived because it had not been raised on direct appeal, and additionally waived for failure to provide either legal citation or cogent argument when raising them in post-conviction relief, but the Court addressed the issue on the merits in conjunction with Hough's ineffective assistance of appellate counsel claim. 690 N.E.2d at 274. The Court found that the instructions did not violate the requirements of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) because the correct law was also provided to the jury. This court finds that, to the extent the issue is not waived for failure to raise it on direct appeal, the Indiana Supreme Court has made a reasonable application of clearly established Supreme Court precedent, and thus, relief would be inappropriate on this claim.

## VII. Consideration of Mitigating Factors

■ Hough next asserts that his Constitutional rights were violated when the trial court judge failed to consider the relevant mitigating factors applicable to him when determining his sentence. It is clear from the record that the trial court judge failed to articulate what, if any, mitigating factors he considered in determining Hough's sentence. Hough did not appeal this issue in his direct appeal, but two justices of the Indiana Supreme Court noted the failure and would have remanded the case for a new sentencing hearing based on that flaw. 560 N.E.2d at 521 (dissents of J. DeBruler and J. Dickson). Hough did raise this issue in his petition for post-conviction relief, and the Indiana Supreme Court did consider the issue on the merits in that setting, despite its finding that the issue was waived due to Hough's failure to raise it on direct appeal. Justice Selby wrote, however, that the trial judge's failure to articulate any mitigating circumstances did not violate *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and further wrote that the judge did consider mitigating circumstances, because he wrote that the "aggravating circumstances outweigh any mitigating circumstances that exist," 690 N.E.2d at 273, and that the Supreme Court on direct appeal had considered the trial court's sentence and found it to be appropriate. *Id.* at 274. This court finds that the Indiana Supreme Court considered this issue in light of established federal law and further finds that interpretation to be reasonable. Thus, no writ will issue on this ground.

## VIII. Chain of Custody of Evidence

■ Although Hough made a claim regarding the chain of custody of certain pieces of evidence in his initial petition, he has apparently abandoned that claim in his later memorandum. Additionally, the issue of chain of custody is a state law evidentiary issue, and thus not appropriate

for federal habeas review. Thus, no relief will be granted on this issue.

## IX. Conclusion

This court has carefully considered the claims of the petitioner, but finds that no Constitutional violations have occurred which would warrant the relief sought. Thus, the petition for habeas corpus is now **DENIED.**

**IT IS SO ORDERED.**