SLOVITER, Circuit Judge,
concurring.
I continue to adhere to the judgment of the court instructing the District Court to grant a provisional writ of habeas corpus directed to the petitioner’s penalty phase. However, my response to the issue on which the United States Supreme Court remanded this case to us differs from that of the majority.
I.
In its per curiam opinion remanding this case, Horn v. Banks, 536 U.S. 266, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002), the Supreme Court directed that we perform an analysis under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), as to the retroactive application of Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The Court believed that we had contravened Caspari v. Bohlen, 510 U.S. 383, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994), “in which [the Court] held that federal courts must address the Teague question when it is properly argued by the government.” Horn, 122 S.Ct. at 2148. We must therefore, as a threshold issue, address Teague which, although a plurality opinion, has since been accepted by the Court as setting forth the standard for retroactivity analysis.
The petitioner in Teague sought to challenge the composition of his jury, as the prosecutor had used all 10 of his peremptory challenges to exclude blacks. Teague had argued throughout, without success, that the jury was not a fair cross section. His habeas petition in the Supreme Court sought the benefit of its decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (holding that under the Equal Protection Clause the prosecutor had the burden to give a race-neutral explanation for its use of peremptory challenges to exclude black persons from the petit jury). The Court had previously held in Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam), that Batson, which overruled a portion of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), could not be applied to a case on collateral review because Batson constituted an “ ‘explicit and substantial break with prior precedent.’ ” Teague at 295, 109 S.Ct. 1060 (quoting Allen, 478 U.S. at 258, 106 S.Ct. 2878). Teague’s second contention in the Supreme Court, that he established a violation of the Equal Protection Clause under Swain, was procedurally barred because Teague never presented that claim to the state courts.
Thus, the Court turned to Teague’s fair cross section claim, where he relied on the holding in Taylor v. Louisiana, 419 U.S. *248 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), that the Sixth Amendment required that the jury venire be drawn from a fair cross section of the community. Teague sought to apply the holding in Taylor to the composition of the petit jury. In holding that acceptance of Teague’s claim would constitute a new rule that it would not apply retroactively to cases on collateral review, the Supreme Court reformulated the standard previously enunciated in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and enunciated the principle that “[ujnless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.” Teague, 489 U.S. at 310, 109 S.Ct. 1060. The Court explained that “[application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.” Id. at 309, 109 S.Ct. 1060.
As to the definition of a “new rule,” the Supreme Court explained in Teague that “[i]n general ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.” Id. at 301, 109 S.Ct. 1060. It continued, “a case announces a new rule if the result was not dictated by precedent existing at the time the defendant’s conviction became final.” Id. The Court recognized two exceptions to its rule of non-retroactivity, both derived from Justice Harlan’s opinion in Mackey v. United States, 401 U.S. 667, 675, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (opinion concurring in judgments in part and dissenting in part). The first is for a rule that places “ ‘certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.’ ” Id. at 311, 109 S.Ct. 1060 (quoting Mackey, 401 U.S. at 692, 91 S.Ct. 1160). The second exception is for “watershed rules of criminal procedure.” Id.
In the Supreme Court’s opinion in Caspari, the Court elaborated on the responsibility of a federal court faced with a habeas petition seeking relief based on a rule announced after the defendant’s conviction became final. Caspari, 510 U.S. at 390, 114 S.Ct. 948. The court must survey “the legal landscape” as it existed on the date the defendant’s conviction became final and then determine if “a state court considering [the defendant’s] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.” Id. (citations omitted). If the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the non-retroactivity principle. Id.
The rule on which Banks relies is that enunciated in Mills. In Mills, the Supreme Court vacated a death sentence where the sentencing court’s instruction left a substantial probability that the jurors may have believed they had to be unanimous on the existence of a particular mitigating factor before it could be weighed against an aggravating factor in determining whether the death sentence should be imposed. 486 U.S. at 375-76, 384, 108 S.Ct. 1860.
Banks contends that in 1987, at the conclusion of his direct review in state court, the Supreme Court had decided numerous cases creating the framework upon which Mills was predicated, and that therefore Mills should not be regarded as a new rule for purposes of non-retroactivity under Teague. Banks argues that by the time his sentences became final as defined un *249 der Teague and Caspari, the Supreme Court had decided ten cases before Mills that “embody the Eighth Amendment prohibition against a state mandated process that creates a barrier to juror consideration of indispensable evidence of the character and record of an offender in a death penalty proceeding.” Appellant’s Supp. Br. at 3. He counts among those cases Furman v. Georgia, 408 U.S. 288, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (invalidating procedures that created a substantial risk that death penalty would be imposed in an arbitrary and capricious manner), and, surprisingly, the three cases after Furman that sustained the imposition of death sentences, Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); and Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Banks’ argument is that although the death sentencing schemes were held constitutional in all three cases, the respective schemes allowed the sentencer to consider the defendant’s evidence of mitigating circumstances.
Banks states that in Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), where sentences of death were overturned because the jurors were prevented from considering all mitigating circumstances, the Supreme Court “recognized the constitutional requirement of an ‘individualized sentencing’ in capital cases.” Appellant’s Supp. Br. at 4. The Woodson plurality gave three reasons for its holding: the state statute at issue imposed a mandatory death sentence for certain offenses; it provided no standards to guide the jury in determining which offenders should be sentenced to death; and it did not allow the sentencer to consider the character and record of an offender and the circumstances of the offense as part of the process of inflicting the death penalty. 428 U.S. at 301-04, 96 S.Ct. 2978.
Banks next notes the decision in Roberts v. Louisiana, 428 U.S. 325, 333-34, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), decided the same day as Gregg, Proffitt, Jurek, and Woodson, which also struck down the death penalty statute because, like that in Woodson, it failed to provide for any meaningful opportunity for consideration of the character and record of the defendant or the circumstances of the crime. Banks then emphasizes the decision in Lockett v. Ohio, 438 U.S. 586, 608, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), where the Supreme Court found unconstitutional a state statute that allowed consideration' of only a limited number of mitigating factors. Continuing along this line, Banks lists Eddings v. Oklahoma, 455 U.S. 104, 113-15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), where the Supreme Court ruled that a sentencing judge improperly decided, as a matter of law, that he could not consider evidence of a defendant’s troubled family history and emotional disturbance as mitigating evidence.
He next references Skipper v. South Carolina, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), holding that the trial judge improperly ruled that the jury could not consider a defendant’s good conduct in prison as mitigating evidence, California v. Brown, 479 U.S. 538, 541, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), upholding the sentence of death by interpreting the jury instruction to be consistent with the Eddings line of cases, and the opinion in Hitchcock v. Dugger, 481 U.S. 393, 398-99, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), decided shortly thereafter, where the Supreme Court held that a new sentencing hearing was required because the advisory jury and judge should have considered evidence of nonstatutory mitigating circumstances.
Banks argues that this line of cases, embodying the rule that a jury in a capital *250 case must be permitted to consider all mitigating factors, compelled the holding in Mills that “prohibited a state from requiring a jury to be unanimous before they could find the existence of a particular mitigating circumstance.” Appellant’s Supp. Br. at 9. He continues, “The Woodson-Lockett-Eddings-Dugger lines of cases dictate such a result.” Id. He relies on the following language in Mills:
Under our decisions, it is not relevant whether the barrier to the sentencer’s consideration of all mitigating evidence is interposed by statute, Lockett v. Ohio, supra; [citation omitted]; by the sentencing court, Eddings v. Oklahoma, supra, or by an evidentiary ruling, Skipper v. South Carolina, supra. The same must be true with respect to a single juror’s holdout vote against finding the presence of a mitigating circumstance. Whatever the cause ... the conclusion would necessarily be the same: ‘Because the [sentencer’s] failure to consider all of the mitigating evidence risks erroneous imposition of the death sentence, in plain violation of Lockett, it is our duty to remand this case for resentencing.’ Eddings v. Oklahoma, 455 U.S., at 117, n., 102 S.Ct. 869 (O’Connor, J., concurring).
Mills, 486 U.S. at 375, 108 S.Ct. 1860, quoted in Appellant’s Supp. Br. at 9.
Banks finds further support in Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989),[1] the only case in the series to consider the retroactivity issue. The petitioner in Penry claimed, inter alia, that he was sentenced to death in violation of the Eighth Amendment because the jury was not adequately instructed to take into consideration the mitigating evidence of his mental retardation and abused background. Under the state sentencing scheme, if the jury answered in the affirmative all of the three “special issues” questions required by the statute, the sentencing court was required to impose the death sentence.[2] The same statute had been challenged previously in Jurek where the Court rejected the challenge, holding that the state court would interpret the second question to allow the jury to consider mitigating evidence. The Penry petitioner argued that the jury would not have been aware that the evidence on which he relied, mental retardation and childhood abuse, could be considered as mitigating circumstances unless it was so instructed by the trial court. The Supreme Court agreed that Penry had a right to resentencing, and remanded so that a new sentencing hearing could be held with instructions informing the jury that it could give effect to the mitigating evidence of Penry’s mental retardation and abused background in considering whether to impose a death sentence. Id. at 328, 109 S.Ct. 2934.
Before reaching its decision, the Court considered whether granting Penry the relief he sought would create a “new rule” under Teague. The Court concluded that it was not applying a new rule under Teague because, at the time the petitioner’s conviction became final, it had already *251 been decided in Lockett and Eddings that a state could not prevent the sentencer from considering and giving effect to mitigating evidence from the defendant’s background, character or circumstances of the offense. Id. at 318, 109 S.Ct. 2934.
The Commonwealth reads the pre-Mills cases differently than does Banks, leading it to conclude that Mills announced a new rule. It reads the decisions on which Banks relies, Lockett, Eddings, Skipper, and Hitchcock, which represent where the law stood at the time Banks’ conviction became final, as reversing the death sentences imposed because the sentencer “had been entirely precluded from considering a category of appropriate mitigating evidence.” Appellees’ Supp. Br. at 4. It points out that in contrast to those cases, the Mills jury could hear and consider any evidence of mitigation that the defendant presented. The Commonwealth states that the Mills rule (which declared unconstitutional the requirement that jurors agree unanimously on a mitigating factor to be used in the weighing step) went beyond the previously enunciated principle that the jury must be allowed to consider mitigating evidence. The Commonwealth argues that Mills enunciated a new rule when it rejected, for the first time, the requirement of unanimity on a particular mitigating factor.
The Commonwealth also contends that the result in Mills, a 5-4 decision, was not a foregone conclusion and “marked a significant leap from prior precedent.” Appellees’ Supp. Br. at 4. It notes that four present Supreme Court justices dispute that the Mills decision was “ ‘controlled or governed’ by Lockett and Eddings, let alone dictated by those earlier decisions.” Id. at 9, citing McKoy v. North Carolina, 494 U.S. 433, 452-56, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Kennedy, J., concurring opinion); id. at 471, 110 S.Ct. 1227 (Scalia, J., dissenting opinion, with Rehnquist, C.J., and O’Connor, J.).
The courts of appeals that have considered whether Mills announced a new rule have divided on their view. In Gall v. Parker, 231 F.3d 265, 322 (6th Cir.2000), cert. denied, 533 U.S. 941, 121 S.Ct. 2577, 150 L.Ed.2d 739 (2001), the Court of Appeals for the Sixth Circuit held that the rule in Mills was not new. The court explained that Lockett was firmly in place in 1981 when petitioner’s conviction became final, and stated that a state court facing the petitioner’s claim at that time would have felt compelled to apply Lockett as Mills ultimately did in 1988. Id. at 323. It further stated that Mills did not break new ground or impose a new obligation on the states or federal government. Id. See also DeShields v. Snyder, 829 F.Supp. 676, 687-88 (D.Del.1993) (concluding Mills did not announce a new rule for Teague purposes).
Unlike the Sixth Circuit, the Court of Appeals for the Eighth Circuit concluded that Mills announced a new rule that does not apply retroactively on collateral review. In Miller v. Lockhart, 65 F.3d 676, 685-86 (8th Cir.1995), the court held that the result in Mills was not dictated by prior cases and while Lockett may inform, control or govern Mills, Lockett did not compel the further holding that a unanimity requirement for mitigating circumstances is unconstitutional. The Court of Appeals for the Fifth Circuit reached the same conclusion in Cordova v. Collins, 953 F.2d 167, 173 (5th Cir.1992), where the court stated that it was precluded by Teague from applying Mills retroactively.
I previously expressed my view that under the Teague analysis the Supreme Court would likely view Mills as announcing a new rule, and that it would not apply retroactively. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 316-17 n. 3 (3d Cir.1991) *252 (Sloviter, J., dissenting). Although I find the result reached by the majority attractive, and I agree that Mills followed logically from earlier cases, I regretfully cannot join the majority’s view that Mills may be applied retroactively to Banks’ case because Mills did not create a new rule for purposes of a Teague analysis.
My view is informed in large part by several decisions of the Supreme Court which, after analyzing Teague, characterized the rules at issue in those cases as new ones. In Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), Parks, a habeas petitioner, claimed that a penalty phase jury instruction telling the jury to avoid any influence of sympathy violated his Eighth Amendment rights. Parks argued that jurors must be allowed to base their sentencing decision upon sympathy after hearing the mitigating evidence.
In concluding that the principle Parks advanced created a new rule under Teague, the Supreme Court held that Lockett and Eddings did not dictate such a result. Id. at 490, 110 S.Ct. 1257. The Court explained that although the decisions in Lockett and Eddings limit the ability of a state to define the factual bases upon which the capital sentencing decision must be made, they do not speak to whether the state may instruct the sentencer to render its decision on the evidence without sympathy. Id. As the Saffle Court explained, “[tjhere is a simple and logical difference between rules that govern what factors the jury must be permitted to consider in making its sentencing decision and rules that govern how the State may guide the jury in considering and weighing those factors in reaching a decision.” Id. Because it deemed the rule sought by Parks to be a new one, the Court did not consider the merits of Parks’ proposed rule. The Commonwealth relies on the distinction made by the Supreme Court in Saffle between what mitigating evidence the jury must be allowed to consider as opposed to how it must consider the mitigating evidence. Appellees’ Supp. Br. at 6.
Another application of the Teague new rule/existing rule distinction is found in Butler v. McKellar, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). In that case, a habeas petitioner sought the benefit of the holding in Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), that the police may not initiate questioning after the accused invokes his right to counsel in the context of a separate investigation. Butler argued that Roberson should be applied to his case because it did not establish a new rule under Teague but merely followed the rule established in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), where the Court held the police must refrain from further questioning after the accused had invoked his right to counsel.
Butler noted that the Supreme Court had stated in Roberson that the case was directly controlled by Edwards. Nonetheless, the Court in Butler decided, in an approach consistent with that it took in Saffle, that Roberson announced a new rule because its result was not “dictated” by the Edwards precedent. 494 U.S. at 409, 110 S.Ct. 1212. The Court explained that its outcome in Roberson was susceptible to debate among reasonable minds, as evidenced by the differing positions taken by judges of other courts. Id. at 415, 110 S.Ct. 1212.
Thereafter, in Graham v. Collins, 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993), the Court once again focused on the meaning of the statement in Teague that a new rule is one that was not “dictated by precedent existing at the time the defendant’s conviction became final.” Teague, 489 U.S. at 301, 109 S.Ct. 1060. Graham, *253 the habeas petitioner, contended that the sentencing jury was unable to give effect to mitigating evidence of his age, background and character within the confines of the three special issues questions in the same Texas sentencing statute at issue in Penry. Although the Court in Penry had required instructions that the jury should consider mental retardation and childhood abuse as mitigating evidence, in Graham the Court held that the relief Graham sought, instructions that the jury consider age, background and character as mitigating, would require announcement of a new rule. Id. at 476-77, 113 S.Ct. 892. It stated that “the determinative question [under Teague] is whether reasonable jurists reading the case law that existed in 1984 could have concluded that Graham’s sentencing was not constitutionally infirm.” Id. Because it could not say, even with the benefit of the Court’s decision in Penry, that reasonable jurists would be of one mind on Graham’s claim, the ruling sought would be a new rule. The Court noted the limited issue before it in Penry and stated that it did not read Penry “as effecting a sea change in [the] Court’s view of the constitutionality of the former Texas death penalty statute; it does not broadly suggest the invalidity of the special issues framework.” Id. at 474, 109 S.Ct. 1060. Thus, it rejected Graham’s reliance on Penry. The language used in the Graham opinion reiterates the need to show the result was “commanded” by the earlier cases if it is not to be viewed as a new rule. See id. at 475, 109 S.Ct. 1060; see also Lambrix v. Singletary, 520 U.S. 518, 528 n. 3, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (finding Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (per curiam), announced a new rule that was not dictated by precedent where earlier cases did not compel the outcome because they did not answer the definitive question before the Court).
Although Mills can be viewed as establishing an incremental step in the series of cases beginning with Furman, I believe it is not commanded by the earlier cases in the sense the Court approached that issue in Saffle, Butler and Graham. Hence, I conclude that Mills established a new rule within the Teague inquiry that does not apply retroactively, unless it falls within one of the two exceptions to Teague.
Those exceptions are narrow. The first exception, that for new rules that place “ ‘certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe,’ ” Caspari, 510 U.S. at 396, 114 S.Ct. 948 (quoting Teague, 489 U.S. at 307, 109 S.Ct. 1060), is plainly not applicable. The manner in which the jury must consider mitigating evidence does not relate to the “primary, private, individual conduct” underlying the offense at issue.
Banks contends that if Mills created a new rule, the second exception, that for “ ‘watershed rules of criminal procedure’ implicating the fundamental fairness and accuracy of the criminal proceeding,” id. (quoting Saffle, 494 U.S. at 495, 110 S.Ct. 1257), applies but I cannot agree. The exception is meant to apply only to a small core of rules requiring observance of those procedures that are implicit in the concept of ordered liberty. Graham, 506 U.S. at 478, 113 S.Ct. 892 (citations omitted). The Saffle Court gave as an example of the type of rule falling within the second exception the rule enunciated in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that a defendant has the right to be represented by counsel in all criminal trials for serious offenses. See 494 U.S. at 495, 110 S.Ct. 1257. In Teague, itself, the Court gave as illustrations for the second exception the classic grounds for the issuance of a writ of habe-as corpus — that the proceeding was domi *254 nated by mob violence, that the prosecutor knowingly used perjured testimony or that a conviction was based upon a confession obtained by brutal methods. See Teague, 489 U.S. at 313, 109 S.Ct. 1060 (citations omitted).
No Supreme Court case since Teague has held the second exception applicable. For example, in Sawyer v. Smith, 497 U.S. 227, 245, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), the Supreme Court found that the rule in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), which held that the Eighth Amendment prohibits the imposition of a death sentence by a sentencer that has been led to the false belief that the responsibility for determining the appropriateness of the defendant’s capital sentence rests elsewhere, does not satisfy the exception. The Court stated that the second exception would apply only to a new rule that, in addition to improving the accuracy of trial, “ ‘alter[s] our understanding of the bedrock procedural elements’ ” essential to the fairness of a proceeding. 497 U.S. at 242, 110 S.Ct. 2822 (citing Teague, 489 U.S. at 311, 109 S.Ct. 1060 (citation omitted)). It further stated that it is “ ‘unlikely that many such components of basic due process have yet to emerge.’ ” Id. at 243, 110 S.Ct. 2822 (quoting Teague, 489 U.S. at 313, 109 S.Ct. 1060).
Although I believe that the rule in Mills is aimed at improving the reliability of capital sentencing, in light of the Supreme Court’s decisions in Saffle, Butler, and Graham I cannot conclude that Mills alters our understanding of the bedrock procedural elements essential to the fairness of a proceeding. Therefore, I reject Banks’ argument that Mills falls within the second Teague exception.
II.
Notwithstanding my view that Mills created a new rule under Teague that does not fall within either of the Teague exceptions, I believe that Teague does not apply in the special circumstances under which the Pennsylvania Supreme Court reviewed Banks’ post-conviction petition. I note initially that in its opinion remanding to this court, the Supreme Court focused only on our failure to analyze the Teague issue and did not reach the merits of our holding in Banks I “that the Pennsylvania Supreme Court ruling involved an unreasonable application of Mills.” Banks v. Horn, 271 F.3d 527, 545 (3d Cir.2001). There would be no basis therefore to assume that the Court rejected that holding. But in light of my conclusion that Mills established a new rule, it is incumbent on me to explain why I believe we are free to apply Mills retroactively to Banks’ case. The explanation lies in Pennsylvania’s unique relaxed waiver rule in effect at the time of Banks’ state post-conviction proceedings.
Banks’ 1983 conviction of first degree murder and related crimes was affirmed by the Pennsylvania Supreme Court on direct appeal in 1987. Commonwealth v. Banks, 513 Pa. 318, 521 A.2d 1(Pa.), cert. denied, 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987). When Banks appealed the trial court’s 1993 denial of his petition for post-conviction relief to the Pennsylvania Supreme Court, he asserted, among other claims, that the jury instructions, jury poll and verdict slip violated Mills (decided after Banks’ direct appeal was completed) by suggesting that the jury’s findings as to mitigating circumstances must be unanimous. The Commonwealth argued that all of the issues raised in the post-conviction petition were waived because Banks failed to raise them on direct appeal. The Pennsylvania Supreme Court agreed that some of the issues could have been raised on direct appeal and thus could be deemed waived *255 under the Post Conviction Relief Act, 42 Pa. Cons.Stat. §§ 9541-46 (“PCRA”), but stated that it would “address all of Appellant’s claims since the trial court addressed all of those claims and since it is this Court’s practice to address all issues arising in a death penalty ease irrespective of a finding of waiver.” Commonwealth v. Banks, 540 Pa. 143, 656 A.2d 467, 470 n. 7 (1995). The first issue it addressed was Banks’ claim that the jury instruction, jury poll and the verdict slip violated the Supreme Court’s mandate in Mills.
The Pennsylvania Supreme Court considered the Mills claim on the merits. This was the first time it did so. It reviewed the jury instruction and found that it had determined in another case that the instruction, “which mirrors the language found in the death penalty statute of [the Pennsylvania] Sentencing Code,” did not violate Mills. Id. at 470. It similarly held that the form of the verdict slip did not violate Mills, and that the answers provided by the jurors during the poll did not suggest that they believed unanimity was required in finding mitigating circumstances. Id.
A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied. Caspari, 510 U.S. at 390, 114 S.Ct. 948; Kapral v. United States, 166 F.3d 565, 572 (3d Cir.1999). Although Banks’ direct appeal technically had been exhausted, the Pennsylvania Supreme Court treated his petition for collateral relief like a direct appeal by considering his Mills claim on the merits. Because the Pennsylvania Supreme Court applied the relaxed waiver doctrine, Banks’ conviction was not final within the meaning of Teague until the Pennsylvania Supreme Court affirmed the denial of his PCRA petition and his petition for a writ of certiorari was denied.
The Teague rule stems in large part from the desire to accord comity to decisions of the state courts, which, in their review of the case, did not have the opportunity to analyze the effect of a subsequent Supreme Court decision. The rationale for the comity principle has been articulated most forcefully in the cases dealing with the exhaustion doctrine. More than a century ago, in Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886), the Supreme Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.
After Congress’ 1948 codification of the exhaustion doctrine at 28 U.S.C. § 2254, the Supreme Court in Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), analyzed the policies underlying the statute as follows:
The exhaustion doctrine is principally designed to protect the state courts’ role in the enforcement of federal law and prevent disruption of state judicial proceedings. [citation omitted]. Under our federal system, the federal and state ‘courts [are] equally bound to guard and protect rights secured by the Constitution.’ [citation omitted]. Because ‘it would be unseemly in our dual system of government for a federal district court to upset a state court conviction tvithout an opportunity to the state courts to correct a constitutional violation,’ federal courts apply the doctrine of comity, which ‘teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have *256 had an opportunity to pass upon the matter.’ [citations omitted].
Id. at 518, 102 S.Ct. 1198 (emphasis added).
More recently, in O’Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), where the Court held that a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement, the Court explained that the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts. It further stated, citing Rose,
State courts, like federal courts, are obliged to enforce federal law. Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief, [citations omitted]. This rule of comity reduces friction between the state and federal court systems by avoiding the ‘unseemliness]’ of a federal district court’s overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance, [citations omitted].
Id. at 844-45, 119 S.Ct. 1728. See also Duncan v. Walker, 533 U.S. 167, 178-79, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (recognizing principle of comity set forth in O’Sullivan and Rose). We also have recognized the same rationale. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir.2000), cert. denied, 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001).
In this case, because of the application of Pennsylvania’s unique relaxed waiver doctrine in capital cases, the Pennsylvania Supreme Court not only had the first opportunity to review Banks’ jury instructions, verdict slip, and jury poll in light of Mills, but exercised that opportunity. It thus treated that claim as on direct appeal and there is no reason why, even though Mills announced a new rule, the Pennsylvania Supreme Court’s resolution of that issue should not be cognizable on federal habeas review. I adhere to the majority’s judgment in our decision filed October 31, 2001 that the Pennsylvania Supreme Court’s ruling denying Banks’ claim under Mills was unreasonable. Therefore, I concur in its judgment today.[3]

. The holding in Penry rejecting the claim that the Eighth Amendment prohibits the execution of a retarded person was abrogated in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

. The special issues were (1) whether the defendant’s conduct was deliberate and with the reasonable expectation that death would result; (2) whether there is a probability that the defendant would commit criminal acts of violence that would be a continuing threat to society; and (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased. Penry, 492 U.S. at 310, 109 S.Ct. 2934.

. The unique circumstances presented by this case are unlikely to recur because the Pennsylvania Supreme Court now strictly construes the state's Post Conviction Relief Act. In Commonwealth v. Albrecht, 554 Pa. 31, 720 A.2d 693, 700 (1998), the Pennsylvania Supreme Court abandoned its application of a relaxed waiver doctrine in capital cases in PCRA appeals because the "ever-widening application of the doctrine has, in effect, virtually eliminated any semblance of finality in capital cases, and frustrated the efficient use of the resources of the court." Since Albrecht, the Pennsylvania Supreme Court has ruled that claims of trial court error, like the Mills claim in the present case, are not reviewable on collateral review. See, e.g., Commonwealth v. Wallace, 555 Pa. 397, 724 A.2d 916, 921 n. 5 (1999) (finding claims of trial court error that could have been raised on direct review waived). It has also rejected the argument that the abrogation of the relaxed waiver rule should not apply retroactively to PCRA petitions filed before Albrecht was issued. See Commonwealth v. Bracey, 568 Pa. 264, 795 A.2d 935, 941 (2001) (because Albrecht merely clarified the court's practice of relaxing its waiver rules in death penalty cases, the *257 defendant suffered no constitutional violation by its retroactive application).